**L.P.W., Jr., Appellant,**

v.

**S.O., Appellee.**

**No. 2–83–196–CV.**

Court of Appeals of Texas,
Fort Worth.

April 12, 1984.

Vick & Vick, and G. Thomas Vick, Jr., Weatherford, for appellant.

Sherry Hill, Fort Worth, for appellee.

Before HUGHES, ASHWORTH and HILL, JJ.

## OPINION

HILL, Justice.

This is an appeal from an order modifying the managing conservatorship of a girl who is now 17 years old. The motion was heard before the trial court sitting without a jury.

We affirm.

Appellant, Father, and appellee, Mother, were divorced prior to January 1, 1974, with Mother receiving custody of the children of the marriage, K.L.W., who is now 17, and her sister, C.W., who is presently 15. On February 5, 1979, apparently by agreement, prior orders with respect to the children were modified so that Father was named managing conservator of K.L.W. Mother remained as managing conservator of C.W., the younger sister. Mother brought this motion to modify the conservatorship of K.L.W. on November 16, 1982. Trial was held on January 10, 1983. The trial court ordered modification of managing conservatorship of K.L.W. on October 27, 1983.

By points of error one through six, appellant urges that there is no evidence or insufficient evidence to support the elements which are required to be proved in order to modify managing conservatorship.

This case was tried to the court without a jury and no findings of fact or conclusions of law were filed or requested, so the facts are deemed to have been found in support of the judgment. The trial court's judgment should be affirmed if it can be upheld on any legal theory supported by the evidence. *Inwood North Homeowners' Ass'n, Inc. v. Meier*, 625 S.W.2d 742, 745 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ).

In our review of appellant's "no evidence" point, it is fundamental that the trial court's implied fact findings must be upheld by us if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown S. & L. Ass'n*, 595 S.W.2d 486, 488 (Tex.1979). There is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). Moreover, in testing these findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Stedman, supra;* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

On the other hand, when we confront a challenge that the evidence is insufficient, we must consider and weigh all the evidence in the case, including that which is contrary to the judgment. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). We must determine whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In other words, this court must decide if the evidence which supports the judgment is so weak, or the evidence to the contrary is so overwhelming, as to warrant a setting aside of the judgment and remanding for a new trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); Calvert, *supra.*

This case is governed by TEX.FAM. CODE ANN. sec. 14.08 (Vernon 1975), as it existed prior to amendment in 1983. In

order to sustain a motion to modify managing conservatorship, the movant must meet the three-prong test outlined by sec. 14.-08(c)(1)(A) and by the Texas Supreme Court in the case of *Jones v. Cable*, 626 S.W.2d 734 (Tex.1981):

> Section 14.08(c)(1) can be paraphrased into three inquiries: before a court can modify a custody order, there (1) must be a change in the circumstances of the child *or parent* so material and substantial that (2) retention of the present managing conservator would be injurious to the welfare of the child and (3) the appointment of a new managing conservator would be a positive improvement for the child.

Testimony was presented by K.L.W., Mother, and Father. The testimony established that K.L.W., after complaining at school of pain in her side, was taken to a doctor without Father's knowledge by Mother, who worked at the school. A few days later, after discovering the child's problem was serious, Mother told Father of the problem. He was very upset. The next school day, Mother was told by school authorities that she could no longer have any contact with her daughter at school. K.L.W. was removed from her position as an aide in the school office where her mother worked. K.L.W.'s stepmother told her to park as far away as possible from her mother at baseball games. She had to do a chore anytime she wanted to go visit her mother. She was not permitted to receive telephone calls from her mother on her own telephone. She was not otherwise prevented from visiting with her mother whenever she desired. K.L.W. testified that she wished to live with her mother and sister. She stated that there had not been any change in the home of her father and stepmother.

Mother testified that K.L.W. had changed in that she was now unhappy and nervous all the time, "a nervous wreck".

Father agreed that he was upset over the doctor incident, and that he had told the school officials not to let any unauthorized persons take the child from school. He denied telling them that he did not want Mother and K.L.W. to talk to each other at school. He denied any instruction to K.L.W. with regard to contact with her mother at baseball games. He also denied that K.L.W. had ever told him that she wanted to go live with her mother, but, during the trial, the following confrontation occurred between him and K.L.W. on this issue:

> THE WITNESS: That's right, sir. And the only thing she's ever told me to this time is she had to go. She never said she wanted to go. She said she had to go.
>
> THE COURT: How many times have y'all talked about it since you got the papers?
>
> THE WITNESS: I've tried to talk to her several times, and that's all she has ever said to me.
>
> And she doesn't have to go.
>
> MISS K.L.W.: That whole day, Daddy, we sat there and I said I wanted to go.
>
> THE WITNESS: Yes, you did, but—
>
> MISS K.L.W.: I said I wanted to go, not I had to go.
>
> THE WITNESS: —you wouldn't ever tell me why. Not one time, Baby, not one time.
>
> MISS K.L.W.: And you told me I could go—
>
> MR. VICK: Your Honor, we have nothing further.
>
> THE COURT: You may step down.

The record also reflects that K.L.W. was upset at the trial.

We hold that the evidence is sufficient to support the judgment modifying conservatorship.

Appellant argues that the emotional distress of the child, which appears to have been brought on by the disturbance of her relationship with her mother and the anger and humiliation which she must have felt at losing her position in the school office, coupled with this child's strong desire to live with her mother, is not a material and substantial change in the child's circumstance. We disagree and hold that these

facts may be considered as a material and substantial change in the child's circumstance.

The appellant would argue that even if there is evidence of a material and substantial change in circumstance, there is no evidence to show that retention of the present managing conservator would be injurious to the child and that the appointment of a new managing conservator would be a positive improvement for the child. In fact, the trial court was presented with a 16-year-old child who appeared to be under a great deal of emotional pressure caused by interference with her relationship with her mother, which included the humiliation of not being able to speak to her mother at school as well as the loss of her job in the school office.

It is reasonable to conclude, without the necessity of additional testimony, that the continuation of this situation would be injurious to the welfare of the child, and that the elimination of this problem by changing managing conservators would be a positive improvement for the child.

Points of error one through six are overruled.

Judgment of the trial court is affirmed.