**D.K. SNIDER, Appellant,**

v.

**K.D. GREY (Flores), Appellee.**

**No. 13–84–202–CV.**

Court of Appeals of Texas, Corpus Christi.

Jan. 3, 1985.

Rehearing Denied Jan. 31, 1985.

Richard C. Smith, Edinburg, for appellant.

Vernon B. Hill, Jr., McAllen, Ruben R. Pena, Jones, Galligan, Key & Pena, Weslaco, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

This is a child custody case. The mother, appellee, brought suit for modification of a divorce decree seeking to change the custody of her nine (9) year old son (John David) from the father to herself. The case was tried before a jury which found in favor of the mother that a material and substantial change of circumstances had occurred since rendition of the prior court order, and that the best interests of the child required a change of custody to the mother. The father, appellant, filed a motion for judgment non obstante veredicto and a motion for new trial, which were overruled. Judgment was entered conforming to the jury verdict. The father appeals from the entry of the trial court's judgment.

A rather detailed recitation of the facts is necessary. The parties were divorced in October of 1978. Under the terms of the divorce decree, to which the parties and their attorneys agreed and executed, appellant (father) was appointed the Managing Conservator of John David Grey-Snider (John), the only child. Appellee (mother) was appointed the Possessory Conservator, having access and possession of the child from Wednesday through Saturday of each week. The divorce decree also provided for the automatic change of Managing Conservator from the father to the mother upon the father's remarriage.

In April, 1983, both parties filed motions to modify the original divorce decree. The mother was seeking to modify the custody arrangement to a full week-to-week period of access because it was not in the child's best interest to go back and forth in the middle of the week, as was previously done. The father, however, sought to reduce the mother's visitation rights to two weekends per month. In May, 1983, the father remarried and the mother sought to enforce the automatic change of conservatorship clause in the divorce decree. On September 1, 1983, the trial judge entered an order voiding that clause in the divorce decree providing for the automatic change of managing conservatorship and severed the clause from the divorce decree. The mother initiated the appellate process, seeking to overturn the trial court's ruling that voided the clause in the decree. She subsequently dismissed the appeal upon accepting the conditions set out by the trial court for a new trial. The parties agreed and stipulated that the automatic change of custody clause would not be relitigated in a new trial for modification of the parent-child relationship.

On January 3, 1984, testimony was presented to a jury on the mother's first amended motion to modify custody. Acting on the one special issue submitted to it by the trial court, the jury found from a preponderance of the evidence that "the circumstances of John David Grey-Snider or David K. Snider or Karen Grey Flores have so materially and substantially changed since the entry of the Divorce Decree of October 30, 1978, that the retention of the present Managing Conservator, David K. Snider, would be injurious to the welfare of the child, and that appointment of Karen Grey Flores as the new Managing Conservator would be a positive improvement for the child."

The trial court entered judgment conforming to the jury verdict, and custody of John was awarded to the mother. The judgment ordered the father to pay to the mother child support in the amount of $300.00 per month, and further ordered the father to pay the mother's (the movant) attorneys' fees and the costs of the court.

We must first dispose of a preliminary issue raised by appellant for the first time on appeal. Appellant moves this Court to vacate the order of the 206th District Court modifying the Decree of Divorce entered by the 139th District Court for want of jurisdiction. Specifically, appellant contends that the 139th District Court was the Court having continuing, exclusive jurisdiction as provided by Section 11.05(a) of the Texas Family Code (Vernon Supp.1983), and that no attempt was made to comply with Section 11.06 of the Code in transferring jurisdiction to the 206th District Court. We find no merit in appellant's motion. The record clearly shows that TEX.R. CIV.P. 18a was implemented pursuant to appellant's motion for recusal. The record further shows that the Judge of the 206th Judicial District Court was assigned to sit for the Judge of the 139th Judicial District Court.[1]

■ As such, this is not a case involving conflicting jurisdiction between two district courts, for which § 11.06 of the Family Code may be implemented. The fact that the final order modifying the court decree (as to the managing conservatorship) is styled "In the District Court of Hidalgo County, Texas, 206th Judicial District," does not affect the validity of the court order. The 139th District Court was established as the court of continuing exclusive jurisdiction, and, therefore, retained continuing jurisdiction over subsequent suits and motions affecting the child. *See Trader v. Dear*, 565 S.W.2d 233 (Tex.1978); *Boriack v. Boriack*, 541 S.W.2d 237 (Tex.Civ. App.—Corpus Christi 1976, writ dism'd). Appellant's motion to vacate is denied.

In his second point of error, the father contends that the trial court erred in denying his motion for an instructed verdict at the close of the movant's case. He contends that, upon the mother resting her case, there was no evidence of any material and substantial change affecting any party since the entry of the divorce decree which would be injurious to the welfare of the child. He further contends there was no evidence presented to support a jury finding with regard to the issue of "positive improvement" in the appointment of a new managing conservator (i.e., the mother). The mother, however, contends that the evidence that she presented raised fact issues which would, in fact and law, support a modification of the conservatorship.

■ An instructed verdict is proper only when no material fact issues have been raised. *Guy v. Stubberfield*, 666 S.W.2d 176, 178 (Tex.App.—Dallas 1983, no

---

1. In the temporary orders signed by the 206th District Court the following appears:

 "The Court, having considered all the pleadings and heard the arguments of counsel, *finds that it has jurisdiction to decide this cause by virtue of the continuing jurisdiction of the 139th District Court over said cause;* the fact that both parties and the subject child reside in Hidalgo County, Texas; the fact that the 139th District Court recused itself from further participation in this cause; and from the fact that the Presiding Judge of the 5th Administrative Judicial District assigned the subject cause to this Court to hear and decide." *See* TEX.REV.CIV.STAT.ANN. art. 200a (Vernon Supp.1984).

writ); *Kennedy v. Kennedy,* 619 S.W.2d 409, 410 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). It is error to grant an instructed verdict, or motion for judgment in a non-jury trial, if the record contains *any* evidence that would support a judgment favorable to the nonmovant. *See Kirkwood v. Kirkwood,* 663 S.W.2d 34 (Tex.App.—El Paso 1983, no writ); *Guthrie v. Ray,* 556 S.W.2d 589 (Tex.Civ.App.—Dallas 1977, no writ); *Allen v. Nesmith,* 525 S.W.2d 943 (Tex.Civ.App.—Houston [1st Dist.] 1975), writ ref'd n.r.e., per curiam, 531 S.W.2d 330 (Tex.1975).

The threshold inquiry in custody modifications is whether there has been a material change of circumstances since the entry of the prior order sought to be modified. *See Jones v. Cable,* 626 S.W.2d 734 (Tex.1981); *Neal v. Neal,* 606 S.W.2d 729, 731 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *In Re Y,* 516 S.W.2d 199 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). The "material change" may relate to the child, the managing conservator, possessory conservator, or other party affected by the prior court order. *See* § 14.-08(c)(1)(A)(amended Sept. 1, 1983).[2] A "material change" in circumstances must be found first before the court examines the other two elements that would justify modification; i.e., that the retention of the present managing conservator would be injurious to the welfare of the child and that the appointment of a new managing conservator would be a positive improvement for the child. *See Dalton v. Doherty,* 670 S.W.2d 422, 424 (Tex.App.—Fort Worth 1984, no writ); *D.W.D. v. R.D.P.,* 571 S.W.2d 224 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.).

Accordingly, we must determine whether the evidence raised a fact issue as to whether there had been a material and substantial change in the child's or the parents' circumstances since rendition of the divorce decree five years earlier.[3] To determine if there is any evidence of all of these elements, we consider all of the evidence in its most favorable light in support of the movant's position, disregarding all of the contrary evidence and inferences. *Henderson v. Travelers Insurance Co.,* 544 S.W.2d 649 (Tex.1976); *Guy v. Stubberfield,* 666 S.W.2d 176 (Tex.App.—Dallas 1983, no writ); *Cameron County Good Government League v. Ramon,* 619 S.W.2d 224 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.).

In discussing material change in circumstances, Justice W.O. Murray, writing for the San Antonio Court of Civil Appeals in *Leonard v. Leonard,* 218 S.W.2d 296, 301 (no writ), said:

> "Material change of conditions which will require a modification of a decree as to the custody of a child is ordinarily such as (1) Marriage of one of the parties. (2) Poisoning of the mind of the child by one of the parties. (3) One of the parties becoming an improper person for the custody. (4) Change in the home surroundings. (5) One of the parties becoming mean to the child, or some other similar material change of conditions." (Citations omitted.)

Since *Leonard,* the Texas courts have expanded the list to include all aspects of a

---

**2.** Act of June 19, 1975, Ch. 476, § 29 TEX. SESS.LAW SERV. 1265 (Vernon), amended by Act of June 17, 1983, Ch. 424, § 9 TEX. SESS.LAW SERV. 2365 (Vernon).

**3.** By counterpoint, the mother contends that the pleadings of both parties admit that there existed a material and substantial change in circumstances; therefore, both parties are deemed to have admitted the same as a matter of law, not requiring further proof. *See O'Hara v. Hexter,* 584 S.W.2d 310 (Tex.Civ.App.—Dallas 1979, no writ). The father's motion to modify, in which he alleged the standard "material change" requirement, was filed for the purpose of modifying the decree as to the mother's visitation privileges. The mother's first amended motion to modify alleged a "material change" for change of custody purposes. The prerequisite proof to justify modification of visitation is not the same required for a change of custody. *See Hollis v. Hollis,* 508 S.W.2d 179, 181 (Tex.Civ.App.—Amarillo 1974, no writ). We do not agree that the parties' respective pleadings stipulated to the effect that the movant (mother) need not prove up this key element to warrant a change of custody under § 14.08(c)(1). *See also* § 14.-08(c)(2).

child's physical, mental, emotional and moral well-being to be considered: moral and religious training, *see T.A.B. v. W.L.B.*, 598 S.W.2d 936 (Tex.Civ.App.—El Paso 1980) writ ref'd n.r.e., per curiam, 606 S.W.2d 695 (Tex.1980); *cert. denied*, 454 U.S. 828, 102 S.Ct. 122, 70 L.Ed. 104 (1981); remarriage of a parent, along with other accompanying facts affecting the welfare of the child, *see Evans v. Tarrant County Child Welfare Unit*, 550 S.W.2d 144 (Tex.Civ.App.—Fort Worth 1977, no writ); *Dohrmann v. Chandler*, 435 S.W.2d 232 (Tex.Civ.App.—Corpus Christi 1968, no writ); changing jobs frequently, *see In Re Y*, 516 S.W.2d 199, 203–04 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.); and emotional health of the child, *see L.P.W. v. S.O.*, 669 S.W.2d 182 (Tex.App.—Fort Worth 1984, no writ); *Jeffers v. Wallace*, 615 S.W.2d 252 (Tex. Civ.App.—Dallas 1981, no writ).

In the present case, the evidence showed that both parties had remarried at the time of trial. The mother testified that she and Dr. Flores were married in or near Washington, D.C., in October, 1980. She explained that she left the Valley believing that John would be spending the upcoming Christmas holidays with them in Washington, D.C. These visitation plans fell through. She and Dr. Flores then moved back to Edinburg, Texas, because they did not want to risk not seeing John frequently. The mother also testified that she believed that, under the terms of the divorce decree, she would be entitled to enforce the automatic change of managing conservatorship clause upon the father's remarriage.

The record shows that the father and his third wife, Susan, were married in May, 1983. Susan Snider has two children of her own from her previous marriage who were also living with the father and John at their farm. The father testified that, at the time he married Susan, he asked his lawyer to initiate proceedings to declare ineffective the disputed clause in the decree, which was ultimately declared void and stricken from the decree by Judge Longoria. The record shows that the father never intended to give up managing conservatorship upon his remarriage as agreed to in the divorce decree.

Susan Snider testified that she first met John in 1980 when he began attending the Montessori School where she was teaching at that time; that she was John's teacher at Montessori in 1982–83; and that John has been a close friend to her son, John Paul, prior to her marriage to the father. She further testified that she enjoys a close relationship to John and that John's relationship with his father has remained very close, even through the changes related to their recent marriage.

The mother listed the following specific instances of material change that she feels are harmful to John's overall welfare: (1) the father's use and practice of neuro-linguistic programming; (2) the father's disrespect for the law; (3) the father's lies and deceptions to John; (4) withholding John from his mother; (5) lack of a proper moral example; (6) permission to curse; (7) strange rituals involving raw organs of a deer; (8) lack of religious training; (9) no dental care; (10) no medical care provided in the last two years; (11) the father's disregard for John's feelings concerning school and time with his mother; (12) excessive amounts of vitamins; (13) the father has been narrowing John's social life; (14) no haircuts; (15) instances where John is badly sunburned; and (16) the father's lack of attention to John's need for braces.

The evidence at trial favorable to the mother showed that the father presently, as well as prior to his divorce, practices in individual, group, and family therapy and vocational counseling. The father testified that he is a certified practitioner of neuro-linguistic programming (NLP), which he explained as a technique used in achieving various changes with people. The father testified that he used NLP before the divorce, but since that time he has become more involved and improved his skills in this particular practice. The father also testified that he has taught John how to relax when he was upset by using a form of self-hypnosis.

The mother testified that she understands NLP to be a very subtle form of mind control, involving some hypnotic techniques. The mother testified that she is concerned about the fact that both the father and his wife, Susan, are trained in this technique, which she believes can be used without a person's knowledge, particularly with a child. She testified that this practice is detrimental to John because she believes that certain ideas are implanted in John's mind in a manipulative manner based on instances in which John has accused her of telling him something that never transpired between them.

Devra Canter, a psychotherapist who was once an associate with the father, testified that she was trained in NLP. She testified that she did not use NLP in her practice because she was concerned about the potential for abuse of power in a therapy situation. Canter opined that NLP can be used on a child such as John.

Concerning the allegations that the father's behavior shows a disrespect for the law, the father admitted that he did not timely deliver John to the mother in August or September, 1983, in violation of a then-existing court order. The father also testified that he did not deliver John to the mother on October 1, 1983, for the month as the court order stipulated. He further acknowledged that, on October 7, 1983, he sent the mother a letter in which he stated that he would not turn John over to her unless and until she agreed in writing to additional visitation terms (i.e., written guarantee that she would leave John in the public school he was enrolled in). The father testified that he had delivered John in October, 1983, which happened to coincide with the hearing date on a habeas corpus proceeding initiated by the mother.

Paul Burkmeyer, a deputy sheriff, testified that he had difficulty in his attempts to serve civil process on the father. He testified that it took him about eight days to serve the father, and that, in his opinion as an experienced process server, the father was attempting to evade process. He also testified that, on the date of the hearing on the contempt motion, the father approached him and gave him a buck knife and a letter expressing appreciation for his (Burkmeyer's) professional behavior.

Concerning the allegations of the father's lies and deceptions to John, the mother and her husband testified at length that the father has misrepresented to John that he was a hero in Vietnam. The father testified that, during his military career, he had been involved in "classified operations" in both North and South Vietnam. He acknowledged, however, that he had previously stated under oath that he has never been to Vietnam. The father also denied telling John that he had rescued a fallen comrade in Vietnam.

The mother testified that the father has misrepresented to John that he (the father) is a Cherokee Indian when, in fact, he is not listed on the rolls of the Cherokee Nation. Dr. Bert Levine, a psychologist who had been seeing John at the mother's request, testified that, during one of his visits, John told him that his father was a medic in Vietnam; that his father has a Ph.D (the father admitted that he did not have a doctorate degree); and that his father was part Cherokee and part Choctaw.

In connection with the father's purported Indian ancestry was the incident in which the father admitted that he had John eat a portion of the raw heart and liver of the first deer the child killed. The father testified that John was eight years old when this incident occurred. He explained to John that it was an Indian tradition to show reverence or appreciation for taking the life of an animal which are our gifts from God. He also testified that he did not remember where he had learned this tradition. The father testified that he and John have talked about Cherokee history, other Cherokee family members, and the Cherokee language.

Dr. Charles Hudson, a doctor of anthropology at the University of North Carolina, testified that he has researched extensively and written several articles on Cherokee religion. Dr. Hudson testified that he did not know of any rituals performed by a

Southwestern Indian boy on killing his first deer, such as eating a portion of a deer's heart.

Both the mother and Dr. Flores testified that these matters were important in the sense that they believe the father is perpetrating a charade. The mother contended that these acts are injurious to John because he believes his father's stories to be true, and when John eventually finds that he has been deceived, it will hurt him and cause him to lose respect for his father.

The record reveals a significant amount of testimony regarding the fact that the father had removed John from the private Montessori School that he attended for three years to a public school. The evidence favorable to appellee mother showed that John expressed his wish to remain at the Montessori School; that he was placed in an accelerated fourth grade class at the public school when he was, in fact, academically closer to a third grade level because of the different teaching and learning approaches between the two schools; that John had experienced a somewhat difficult adjustment period, academically and emotionally, due to the significant changes in his life (i.e., divorce of his parents; getting a new step-mother and step-father; changing schools with a new environment and new friends). The mother testified that the change in schools at a particularly stressful time in John's life has given him a sense of failure in school.

As stated previously, the record shows ample testimony concerning the allegations of withholding the child from his mother in disregard of a standing court order. Dr. Flores also testified about his past conversations with the father about John in which they ultimately agreed to try alternating weeks, rather than splitting up the week, so there would be minimum disruption in John's life. Dr. Flores testified that the father's conduct of withholding John in contravention of their agreement gave rise to the court proceedings seeking to establish set rules on visitation and other matters. The father admitted that he had tape recorded various conversations with the mother and Dr. Flores.

The mother contended that the difference in John's age from the time of the divorce to the time of the modification suit (i.e., 4 years old to almost 10 years old) is also evidence of a material change in John's life. She contended that John is at a vulnerable stage in his life, and he needs good moral examples and religious training, which the father has not provided. The father testified that Susan and her two children moved into his house several weeks before they were married and that he and Susan shared the same bedroom at a time when John and her children were present. There was also testimony that the father had not attended church with John within the last year. Concerning the allegations of permission to curse, the father testified that, if John is going to use a cuss word to express himself, he must do it at the farm or on the deer lease. He testified that he does not permit John to use such language around other people.

Concerning the allegations of John's physical needs, the father admitted that, during the five years since the divorce, he had not taken John to the dentist. The mother testified that John needs orthodontist work and that the father has simply told John to "push on his teeth with his thumb," rather than get him the braces he needs. The mother testified that, according to the most recent records of John's physician, his last physical checkup occurred two years ago. The mother testified that only she provides regular haircuts for John. She also testified that, at least three times every summer, when John goes fishing with the father, John is sunburned to the extent that he blisters, and it takes about two weeks to heal. She and Dr. Flores also testified about occasions when John did not want to go hunting or fishing with the father, and that the father did not allow him a choice in those activities.

The record shows that both the father and the mother proffered expert testimony to support their respective positions on the custody modification. The mother's expert

witness, Dr. Bert Levine, testified that he had seen John professionally on five occasions to determine if he had any emotional problems. The expert testified that his interviews with John indicated that he preferred to live with his mother; that John was scared to tell his father that he did not want to live with him any longer; that John was afraid of his father because he has a bad temper; and that the father pressures John to stay at the farm. In conclusion, the mother's expert testified that John is a bright child; very mature; seems to be well at ease with people; and that John has demonstrated behavior of a well adjusted, mentally healthy child.

■ We conclude, after considering all of the evidence presented by movant mother, that such evidence raised a fact issue as to whether there was a change of circumstances since the divorce of such a material and substantial nature that retention of the father as managing conservator would be injurious to the child.

■ Next, we consider all of the evidence presented by the mother to determine whether a fact issue is raised by the evidence regarding whether a change in the managing conservator would be a positive improvement for the child. Testimony of the mother showed that, at the time of the divorce, she was in a state of depression; physically and emotionally exhausted; and aged beyond her years. Since that time, she has fully recovered from any physical ailments and is emotionally stable. The mother testified that she has a very good marriage to Dr. Flores, who is vice-president for Business Affairs at Pan American University in Edinburg, Texas. The mother testified that Dr. Flores is an excellent father to John and that he has been a stabilizing influence (emotionally and economically) for herself and John. Dr. Flores testified that he enjoys a close relationship with John and that he enjoys spending time with John engaging in various activities; (i.e. playing football, baseball, reading, working on the computers at the office). Dr. Flores also testified that

they were able to provide John with nice living arrangements.

The mother testified that she now attends church regularly and, in fact, calls herself a "born-again Christian." She testified that she continues to take John to church with her every Sunday and encourages regular practice of prayer. The mother also testified to the effect that she would continue to have John visit his physician and dentist regularly.

After carefully reviewing the record as a whole, we find that there was ample evidence that would raise an issue of fact on whether a change of custody would be a positive improvement for the child. Having found that these three material issues of fact have been raised by the evidence in the record before us, we conclude, as we must, that the trial court did not err in overruling appellant's motion for directed verdict. *See Guy v. Stubberfield*, 666 S.W.2d at 178; *Kirkwood v. Kirkwood*, 663 S.W.2d at 36; *T.A.B. v. W.L.B.*, 598 S.W.2d at 938. Appellant's second point of error is overruled.

In his third point of error, the father challenges the factual insufficiency of the evidence to support the jury finding in favor of modification. He contends that the trial court's judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust, and, therefore, the trial court erred in denying his motion for new trial. *See Becerra v. Garibaldo*, 526 S.W.2d 780 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

We, of course, are guided by well established rules of law in considering legal and factual insufficiency points. *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 359 (1961).

■ In summary, the evidence affirmatively shows the following: (1) the father

had remarried; (2) the father became a step-father to the two children of his new wife, resulting in a change of the home environment; (3) the parties agreed that the "fifty-fifty" joint custody provisions of the original decree were unworkable and no longer in the best interest of the child; (4) the parties voluntarily changed to a shared custody arrangement that was more beneficial to the child, (i.e. week-to-week basis); (5) that, for various reasons, the father continued to act so as to deprive the child of that beneficial arrangement through his position as managing conservator; (6) the father unilaterally changed the educational arrangements for the child; (7) the child was present at a time when the father and his current wife were living together out of wedlock; (8) that there was a neglect in the religious training by the father; (9) that both the father and his wife were pursuing their interests and involvement in a therapy known as neuro-linguistic programming. There was other evidence that we need not recite that, together with what we have said herein, would justify the jury's finding of material change of circumstances.

The father contends that, even if the foregoing evidence is sufficient to show a change of circumstances, the evidence to the contrary of any injury related to such change is so overwhelming as to warrant a setting aside of the judgment and remanding for a new trial. When all of the evidence is considered, we are of the opinion that it is factually sufficient to support the jury's finding that, as a result of the changed circumstances, the father's continued custody of the child would be injurious to the child's welfare. The fact that there may be evidence to the contrary is immaterial.

We are also of the opinion that the evidence supports the jury's finding that a change of custody to the mother would be a positive improvement. The requirements of the Family Code, § 14.08(c)(1)(C), that there must be a "positive improvement," invites comparison between the environment provided by the father and the new environment provided by the mother. It is reasonable to conclude, without the necessity of additional testimony, that the appointment of appellee as the new managing conservator would be a positive improvement for the child's future welfare.

We hold, after considering all the evidence, that the judgment of the trial court is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See L.P.W. v. S.O.*, 669 S.W.2d 182 (Tex.App.—Fort Worth 1984, no writ); *T.A.B. v. W.L.B.*, 598 S.W.2d at 940; *In re Y*, 516 S.W.2d at 204. Appellant's third point of error is overruled.

In his first point of error, the father contends that the trial court erred in admitting testimony as to alleged family violence occurring prior to the entry of the divorce decree. Appellant (father) has the burden to affirmatively show that the trial court erred by admitting the evidence and that such error was reasonably calculated to and probably did cause rendition of an improper judgment. TEX.R.CIV.P. 434. We are required to review the entire record and grant a reversal only if we are convinced that a different verdict would have been rendered but for the error. *Ramirez v. Wood*, 577 S.W.2d 278, 289 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Otto v. Otto*, 438 S.W.2d 587 (Tex.Civ.App.—San Antonio 1969, no writ). The father complains that the trial court's most critical example of error was in admitting the following testimony between counsel for appellee (mother) and the father:

"BY MR. PENA:

Q. Isn't it true David, that Karen wanted that change of managing conservatorship in the original divorce decree because ...

MR. SMITH: Your Honor, I'm going to object to him asking this witness why she wanted the clause in the divorce decree because it goes beyond the scope of inquiry as to something that she had in her mind before the divorce decree was entered, and I object to that being not material or relevant to the issues in this case. And, furthermore, that whatever her reason is, it would be more preju-

dicial to the jury in being able to reach a fair decision as to what's happened since the divorce than it would be valuable to prove any change in circumstances detriment to the child as a positive improvement on behalf of the Movant.

THE COURT: It will be overruled.

THE WITNESS: Can you repeat the question, please?

BY MR. PENA:

Q. I certainly will, David. Isn't it true that the reason Karen wanted that automatic change of conservatorship, managing conservatorship on your remarriage was due primarily to the fact that she did not want to see John subjected to the same, or have John witness the same physical abuse that she suffered while she was married to you?

A. It's not true."

Outside the jury's presence, the mother's attorney obtained permission to cross-examine appellant on his earlier testimony that the clause was inserted in the decree at the mother's insistence. The record clearly shows that the trial court intended to limit the scope of inquiry as to the purpose of the clause as part of the divorce decree that was admitted in evidence. Further, when the issue appeared again, the trial court sustained appellant's objection to any testimony regarding violence that occurred *before* the divorce decree. We find that error, if any, in admitting the above testimony was harmless.

In addition, appellant complains generally of the admission of any and all evidence of alleged violations of prior court orders in the face of an agreement not to relitigate the same. We have reviewed the parties' "Agreement Not to Relitigate Automatic Conservatorship" and the Order Granting a New Trial and find there was no such agreement not to relitigate the matters now complained of by appellant. Further, appellant points to no specific objections and rulings in which he contends he was harmed in such a manner as to constitute reversible error. TEX.R.CIV.P. 434.

■ After carefully reviewing the voluminous record (in excess of 2,000 pages of testimony), we find that the record as a whole does not afford a substantial basis for the reasonable belief that the error, if any, in admitting the evidence complained of by appellant caused or may have caused the rendition of an improper judgment. There is ample evidence, both competent and relevant, to support the judgment of the trial court. Appellant's first point of error is overruled.

■ Because of our previous holdings concerning the legal and factual sufficiency of the evidence, it will be unnecessary for us to consider appellant's fourth point of error challenging the award of attorneys' fees in the event of a reversal by this Court on the merits of the case. TEX.FAM. CODE ANN. § 11.18 authorizes the award of reasonable attorneys' fees "[i]n any proceeding under this subtitle" (i.e., that affecting the parent-child relationship). The award of such fees in this type of action is within the discretion of the trial court. *Havis v. Havis,* 657 S.W.2d 921 (Tex.App.— Corpus Christi 1983, no writ); *Neal v. Neal,* 606 S.W.2d 729, 731 (Tex.Civ.App.— Beaumont 1980, writ ref'd n.r.e.). Appellant's fourth point of error is overruled.

The judgment of the trial court is AFFIRMED.