In The



Court of Appeals



Ninth District of Texas at Beaumont


 

____________________



NO. 09-03-401 CV


____________________



IN THE INTEREST OF J.W.H., A Minor






On Appeal from the 317th District Court


Jefferson County, Texas


Trial Court Cause No. F-164,908-B






MEMORANDUM OPINION



 The trial court changed the primary custodial parent of J.W.H. from his mother to his
father. The trial court's ruling came at the conclusion of a bench trial stemming from a
petition to modify a prior order establishing conservatorship, and a counter-petition to modify
the same order. The father, La Tye Hatcher, was the petitioner, and the mother, Tonya
Warren, was counter-petitioner. 

 The record reflects that Mr. Hatcher and Ms. Warren were divorced in May 1997. At
that time, J.W.H. was three years old. The decree of divorce named both parents joint
managing conservators of J.W.H., with Ms. Warren having "exclusive right to establish the
school attended by the child within Jefferson County, Texas." Mr. Hatcher was ordered to
pay child support. Mr. Hatcher's modification petition alleged a material and substantial
change in circumstances had occurred and requested the decree be modified to name him sole
managing conservator of J.W.H. He asked that Ms. Warren be appointed possessory
conservator and ordered to pay child support. 

 In her counter-petition, Ms. Warren also alleged a material and substantial change in
circumstances. She asked that the prior decree be modified to provide "standard visitation
pursuant to the Texas Family Code[,]" and she requested an increase in the amount of child
support from Mr. Hatcher. 

 Mr. Hatcher, Ms. Warren, Kevin Warren (Ms. Warren's husband) and Barbara Valsin
(Ms. Warren's mother) testified. At the conclusion of the testimony, the trial court ruled that
it would be in the best interest of J.W.H. to give Mr. Hatcher the exclusive right to establish
the residency of the child. No child support payments by Ms. Warren were ordered. 

 Ms. Warren filed this appeal, raising the following two issues: 

 Issue One: The trial court abused its discretion in awarding the right to
establish residency of the minor child to appellee without setting forth the
factor or factors which constitute a material and substantial change resulting
in a decision in the best interest of the child. 


 Issue Two: The trial court abused its discretion by filing factually insufficient
findings on the material and substantial change found to support the award of
the exclusive right to establish residency to appellee and the findings are
against the great weight and preponderance of the evidence. 


The appellate record includes the trial court's findings of fact and conclusions of law, and
a complete reporter's record. 

 J.W.H. was nine years' old at the time of trial. Mr. Hatcher had been remarried for
four years and Ms. Warren had been remarried for ten months. Mr. Hatcher's wife had two
boys, one eleven years old and one nine years old. Ms. Warren's husband, Kevin Warren,
had one prior marriage which produced one child, and three other prior relationships which
produced three other children. Kevin testified that he paid child support for all four children. The precipitating event for the instant litigation was Mr. Hatcher being informed by
Kevin Warren that Mr. Hatcher was no longer permitted to call the Warren house to talk to
J.W.H. or to Ms. Warren. Mr. Hatcher was told by Kevin Warren to call him first if Mr.
Hatcher needed to speak to J.W.H. or to Ms. Warren. Mr. Hatcher considered this to be a
change in circumstances that interfered with his relationship with J.W.H. Also, when J.W.H.
was at Mr. Hatcher's residence, Kevin Warren would not permit Ms. Warren to call J.W.H. 
While J.W.H. was visiting Mr. Hatcher for the month of July 2003, Ms. Warren did not
telephone J.W.H. 

 There was also evidence of a recent relocation by the Warrens and J.W.H. from
Beaumont to Fannett. This necessitated J.W.H. changing from the school in Beaumont to
a school in Fannett. Mr. Hatcher stated it would work a hardship on him and on J.W.H. to
move from the Beaumont to the Fannett school. Evidence also indicated that because of the
hours worked by Ms. Warren as a deputy constable in Port Arthur, as well as some part-time
jobs, Ms. Warren would not be able to provide the personal attention to J.W.H. as Mr.
Hatcher would. Further testimony indicated that J.W.H. would arrive home from school
prior to any adult being present. At Mr. Hatcher's residence, Ms. Hatcher would always be
home prior to the children arriving on the school bus. Mr. Hatcher stated that it would be in
J.W.H.'s best interest to live with him, and for J.W.H. to be able to freely communicate with
Mr. Hatcher and Ms. Warren at any time. 

 Among other things, the trial court found: (1) the circumstances of J.W.H. and Tonya
Warren had materially and substantially changed since the rendition of the divorce in 1997;
(2) that Kevin Warren, the husband of Tonya Warren, mother of J.W.H., had four children
by four different women and had very little to do with two of those children; (3) that Kevin
Warren was not a positive role model for J.W.H.; (4) that Tonya Warren worked an extra job
at night, taking time away from her relationship with J.W.H.; (5) that La Tye Hatcher had
more time to spend with J.W.H. and it was in the best interest of J.W.H. that he spend more
time with Mr. Hatcher; (6) that Tonya Warren permitted J.W.H. to remain at home alone
from the time he got home from school until the time Ms. Warren got home from work, and
that this was not in the best interest of the child. Based upon the evidence, the trial court
concluded that it was in J.W.H.'s best interest that La Tye Hatcher be named the joint
managing conservator with the exclusive right to establish the legal domicile of J.W.H. 

 In her first issue, Ms. Warren argues the trial court abused its discretion by appointing
Mr. Hatcher managing conservator with the right to establish the residency of J.W.H. without
explicitly setting out the factors which constitute a material and substantial change in
circumstances showing that the modification was in J.W.H.'s best interest. We review the
trial court's modification of managing conservatorship under an abuse of discretion standard. 
In re T.D.C., 91 S.W.3d 865, 872 (Tex. App.--Fort Worth 2002, pet. denied); see Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982) (applying the same standard of review in
original determination of conservatorship). A trial court abuses its discretion if it acts
arbitrarily and unreasonably or without reference to guiding principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 

 A trial court may modify an order that establishes conservatorship of or possession
of and access to a child if modification would be in the best interest of the child and "the
circumstances of the child, a conservator, or other party affected by the order have materially
and substantially changed since . . . the date of the rendition of the order." Tex. Fam. Code
Ann. § 156.101 (Vernon Supp. 2004); In re V.L.K., 24 S.W.3d 338, 342 (Tex. 2000). A
court's primary consideration in any conservatorship case shall be the "best interest of the
child." Tex. Fam. Code Ann. § 153.002 (Vernon 2002); V.L.K., 24 S.W.3d at 342. Courts
consider many factors in determining the child's best interest. See Holley v. Adams, 544
S.W.2d 367, 371-72 (Tex. 1976); see also In re Doe 2, 19 S.W.3d 278, 282 n. 20 (Tex. 2000)
(recognizing that intermediate courts employ the Holley factors to ascertain best interest in
conservatorship cases). Those factors include, but are not limited to:

 (1) the desires of the child;


 (2) the emotional and physical needs of the child now and in the future;


 (3) the emotional and physical danger to the child now and in the future;


 (4) the parental abilities of the individuals seeking custody;


 (5) the plans for the child by these individuals;


 (6) the stability of the home;


 (7) the acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and


 (8) any excuse for the acts or omissions of the parent. 

 

See Holley, 544 S.W.2d at 371-72. 

 We have no evidence in the record as to the desires of J.W.H. as the only bit of
testimony directly on the issue was objected-to as being hearsay. The trial court sustained
the objection. The trial court did hear testimony that J.W.H.'s emotional needs were
apparently affected somewhat negatively by being unable to telephone his father. Apparent
physical danger was also presented in the testimony with regard to J.W.H. arriving home
after school and having to wait at least thirty minutes for an adult to arrive. While the
evidence suggests that the abilities of both parents were good, the record does reflect that Mr.
Hatcher's home would provide constant adult supervision for J.W.H. 

 Regarding any plans for the child by the parents, the move by the Warrens from
Beaumont to Fannett would cause J.W.H. to change schools. The implication from the
testimony of Mr. Hatcher was this would not be good for J.W.H. as he was doing well in the
Beaumont school. As Mr. Hatcher lived in Beaumont, having J.W.H. live with Mr. Hatcher
would permit the child to remain in school in Beaumont. Stability of home life of J.W.H.
was apparently also a factor for the trial court as it would appear that the Warrens' work
schedules were somewhat inconsistent and less stable than those of the Hatchers. The acts
or omissions factor appears to come into play with Ms. Warren apparently acquiescing to her
husband's decision that Mr. Hatcher was to communicate with either J.W.H. or Ms. Warren
through Kevin first, and that Ms. Warren was not permitted to speak to Mr. Hatcher at any
time, nor speak with J.W.H. when the child was at the Hatcher residence. Finally, certain
"mitigating" testimony was offered for the Warrens -- for example, the Warrens testified that
J.W.H. was permitted to telephone Mr. Hatcher, but that because of Mr. Hatcher's "extreme"
and "harassing" telephoning, Mr. Hatcher's telephone access to J.W.H. and Ms. Warren was
going to be strictly controlled by Kevin, especially during the pendency of the litigation. It
was shown that, following the move to Fannett, there would always be an adult present when
J.W.H. returned home from school.

 All of this testimony was for the trial court to analyze to ultimately determine
J.W.H.'s best interest. A trial court is in the best position to observe the demeanor of the
witnesses, something that cannot be evaluated from a reading of the record. Warchol v.
Warchol, 853 S.W.2d 165, 169 (Tex. App.--Beaumont 1993, no writ). It was for the trial
court to determine what Holley factors were proven from the testimony of the witnesses. The
trial court concluded that naming Mr. Hatcher as joint managing conservator, with the
exclusive right to establish J.W.H.'s domicile, was in the child's best interests. 

 The trial court did detail its fact findings, and found these facts established a material
and substantial change in circumstances. We conclude that the trial court did not err in
concluding a material and substantial change in circumstances had occurred. A court's
determination as to whether a material change of circumstances has occurred is not guided
by rigid rules and is fact-specific. See L.P.W. v. S.O., 669 S.W.2d 182, 184-85 (Tex. App.--Fort Worth 1984, no writ). Remarriage by one or both parents has been deemed by Texas
courts as a pertinent factor in considering whether a material change in circumstances has
occurred. In re C.Q.T.M., 25 S.W.3d 730, 734-35 (Tex. App.--Waco 2000, pet. denied) .
Evidence of a step-parent's conduct and parenting abilities can also be relevant to deciding
whether or not to newly appoint, or to retain, a parent as managing conservator with the
exclusive right to establish the child's domicile. Id. at 734-36. 

 At the time of entry of the divorce decree in 1997, J.W.H. was only three years old. 
At the time of trial, J.W.H. was almost ten. "[T]he change in a child from a babe in arms or
toddler to a school-aged child in itself is sufficient to show the material change necessary to
support modification[.]" See In re Davis, 30 S.W.3d 609, 615 (Tex. App.--Texarkana 2000,
no pet.) (citing Horne v. Harwell, 533 S.W.2d 450, 452 (Tex. Civ. App.--Austin 1976, writ
ref'd n.r.e.). 

 The Warrens' move out of the Beaumont school district, and the negative tone of the
interrelationship between Mr. Hatcher and Ms. Warren coming very shortly after her
marriage to Kevin Warren, provide additional support for the finding of a material and
substantial change in circumstances. The trial court did not abuse its discretion in its finding
that the circumstances of J.W.H. and of Ms. Warren had materially and substantially
changed. Issue one is overruled. 

 Issue two complains of the lack of sufficient evidence to support the trial court's
findings. A trial court's findings are reviewed for factual sufficiency under the same
standard used in reviewing a jury's verdict. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). An appellate court considers
all the evidence and will set aside the findings only if the evidence supporting the finding is
so weak as to be clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986). In determining a "no evidence" issue, we are to consider only the evidence and
inferences that tend to support the finding and disregard all evidence and inferences to the
contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Continental Coffee Prods. Co.
v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). Anything more than a scintilla of evidence
is legally sufficient to support the finding. Cazarez, 937 S.W.2d at 450; Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence
furnishes some reasonable basis for differing conclusions by reasonable minds about the
existence of a vital fact. Rocor Int'l, Inc. v. National Union Fire Ins. Co., 77 S.W.3d 253,
262 (Tex. 2002). 

 As we have detailed above, more than a scintilla of evidence supports the trial court's
findings. The evidence is factually sufficient also. Certainly, Tonya Warren presented
favorable evidence in her behalf for retaining primary custody of J.W.H. Both Ms. Warren
and Mr. Hatcher acknowledged the other as a good parent. However, the evidence reflects
that two months after Ms. Warren married Kevin Warren, Mr. Hatcher was told by Kevin
that his calls to J.W.H. or to Ms. Warren had to stop. Although Ms. Warren testified that Mr.
Hatcher's calling was troublesome even prior to her marriage to Kevin Warren, she also
stated that she did not seek court intervention to stop or reduce Mr. Hatcher's calling. Mr.
Hatcher testified he was not aware of any problems concerning his telephone calling prior
to Ms. Warren's marriage to Kevin. 

 Although the trial court was aware of Kevin Warren's position as a patrol officer with
the Houston Police Department, the trial court was obviously concerned by Mr. Warren's
actions in severely limiting Mr. Hatcher's ability to communicate with J.W.H. From all of
the testimony presented, we cannot say the trial court's findings are so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Cain,
709 S.W.2d at 176. We overrule issue two.

 Having overruled both of Ms. Warren's appellate issues, we affirm the modification
order rendered by the trial court. 

 AFFIRMED.

 PER CURIAM


Submitted on March 4, 2004

Opinion Delivered March 25, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.