

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00048-CV

_____

IN THE INTEREST OF T.E. AND A.E., CHILDREN

On Appeal from the 354th Judicial District Court
Hunt County, Texas
Trial Court No. 74562

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Christopher Lamb was in jail June 4, 2007, the date his daughter T.E. was born; has been incarcerated during T.E.'s whole life; and, thus, has never seen her in person. When T.E. was two years old, her mother voluntarily relinquished her parental rights to the child, and T.E. began living with her maternal grandmother and step-grandfather. When T.E. was three years old, a petition for termination of Lamb's parental rights was filed. After a bench trial,[1] Lamb's parental rights to T.E.[2] were terminated. We affirm the order of the trial court because (1) legally and factually sufficient evidence support termination under Section 161.001(1)(Q) of the Texas Family Code, (2) termination was in T.E.'s best interest, and (3) Lamb's attorney was not ineffective.

*(1)* *Legally and Factually Sufficient Evidence Support Termination Under Section 161.001(1)(Q) of the Texas Family Code*

Parental rights may be terminated when the court finds clear and convincing evidence that termination is in the best interest of the child, and the parent has "knowingly engaged in criminal conduct that has resulted in" the parent's conviction of an offense and "confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(1)(Q)(ii) (West Supp. 2011). The two-year time

---

[1]This case was originally tried to an associate judge. After a bench trial, an order of termination was entered February 2, 2011. Thereafter, a trial de novo was requested and granted. After a bench trial, a de novo order of termination was entered May 31, 2011.

[2]Although this appeal is styled to also include the initials A.E., T.E.'s sister, the judgment at issue relates solely to T.E. A.E. is not Lamb's child and is not involved in this appeal. The mother of T.E. and A.E. voluntarily relinquished her parental rights to both children.

2

period is applied prospectively from the petition's filing date. *In re A.V.*, 113 S.W.3d 355, 356 (Tex. 2003); *In re R.A.L.*, 291 S.W.3d 438, 442 (Tex. App.—Texarkana 2009, no pet.).

Clear and convincing evidence is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008). This standard of proof necessarily affects our review of the evidence. In our legal sufficiency review, we examine the entire record in the light most favorable to the finding to determine whether a reasonable fact-finder could have formed a firm belief or conviction "about the truth of the matter on which the State bears the burden of proof." *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). While undisputed facts cannot be disregarded, we are to disregard all evidence a reasonable fact-finder could have disbelieved or found incredible. *Id.* at 266.

In our factual sufficiency review, we give due deference to the determinations of the fact-finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We consider only that evidence the fact-finder could reasonably have found to be clear and convincing and determine whether "the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.*; *J.F.C.*, 96 S.W.3d at 266. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003). Conversely, we are not to be "so rigorous that the only fact-findings that could withstand review

3

are those established beyond a reasonable doubt." *H.R.M.*, 209 S.W.3d at 108.

Lamb contends the evidence is legally and factually insufficient to support termination because there is no evidence that his convictions will result in confinement for at least two years from the date the petition was filed. *See* TEX. FAM. CODE ANN. § 161.001(1)(Q). The Department of Family and Protective Services (the Department) filed its petition for protection of a child, for conservatorship, and for termination in suit affecting the parent-child relationship August 26, 2009. At trial, the Department proved Lamb (1) was then serving a six-year prison sentence for tampering with physical evidence, which sentence commenced November 14, 2006, with 133 days' credit, and (2) was then serving a six-year prison sentence for aggravated assault with a deadly weapon, which sentence commenced December 5, 2006, with ninety-one days' credit.[3] Lamb testified that his sentence for aggravated assault will not be completed until the fall of 2012. Lamb further testified that he has been incarcerated continuously since before T.E.'s birth.[4]

Lamb's trial took place February 2, 2011, when Lamb had been incarcerated less than two years after the date the petition was filed. While Lamb admits his sentence will not be discharged until the fall of 2012, his next parole hearing was scheduled for May 2011. At trial, Lamb believed "his chances for parole are good." Because the evidence was, at best, uncertain as to

---

[3]This sentence is to run concurrent with the preceding sentence for tampering with physical evidence.

[4]T.E.'s mother also testified that Lamb has been incarcerated all of T.E.'s life.

when Lamb would be released, he claims that no evidence showed he would remain incarcerated until August 26, 2011. Thus, Lamb claims, the evidence is legally and factually insufficient to support termination.

In the face of a similar argument, the Texas Supreme Court has ruled it was within the fact-finder's authority to decide the issue either direction. That court explained that, while evidence of availability of parole is relevant, its mere introduction "does not prevent a fact-finder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years," because "[p]arole decisions are inherently speculative." *H.R.M.*, 209 S.W.3d at 109. Because the fact-finder is the sole arbiter when assessing the demeanor and credibility of a witness, it is free to disregard the testimony regarding the probability of parole, "which is barely more than conjecture," especially when the record shows multiple convictions. *Id.*; *see R.A.L.*, 291 S.W.3d at 443.

The record here indicates Lamb was previously convicted in another matter,[5] in addition to the convictions for aggravated assault and tampering with evidence, for which he is currently imprisoned. Lamb testified he was denied parole on each of the two previous occasions his case was reviewed by the parole board. In light of this evidence, and in light of the fact that Lamb was twice denied parole, the jury was free to disregard Lamb's optimistic testimony. We, therefore,

---

[5]Lamb was arrested in Harris County for the offense of aggravated sexual assault of a child in 2003. As part of a plea bargain, the State reduced the charge to indecency with a child by exposure. After pleading guilty to the reduced charge, Lamb was sentenced to two years in prison.

conclude that the fact-finder could have reasonably formed a clear and convincing belief that Lamb would be incarcerated at least through August 26, 2011.[6]

In addition to requiring the parent be confined or imprisoned for not less than two years from the date of filing the petition, Section 161.001(1)(Q) of the Texas Family Code also requires an inability on the part of the incarcerated parent to care for the child during the period of incarceration. TEX. FAM. CODE ANN. § 161.001(1)(Q); *A.V.*, 113 S.W.3d at 360.

The evidence here showed Lamb sent T.E. "cards, anything that I can send to her to let her know I love her and care for her." Lamb admitted, however, that he made no provisions for T.E.'s care while he was in prison, stating, "Can't do anything. I am incarcerated." Lamb testified that he will provide T.E. with a safe environment during any visitation he might receive, and will be able to contribute to T.E.'s financial support in the future through employment with his grandfather's remodeling business.

Evidence that Lamb may be able to care for the child after he is released from prison does not establish that he has the ability to care for the child for the requisite time during his imprisonment. *See* TEX. FAM. CODE ANN. § 161.001(1)(Q)(ii); *A.V.*, 113 S.W.3d at 360 (when parent who is convicted and sentenced to serve at least two years is unable to provide for child

---

[6]The issue in a factual sufficiency review is not whether there is a possibility of release on parole; rather, it is whether the disputed evidence established that Lamb would be released from prison before the second anniversary of the date of the filing of the termination petition. *See H.R.M.*, 209 S.W.3d at 108. At trial, Lamb testified, "[O]nce you're denied parole twice and you're still - - behavior is still good the third time, you're more likely to get it. My behavior has been up to par." This evidence is purely conjecture. *See In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.) (father's "hope that he might be granted early release is pure speculation").

during that time, State may use subsection Q to ensure child will not be neglected). The evidence established Lamb has not provided any support to T.E.

The evidence is both legally and factually sufficient to support the trial court's finding under Section 161.001(1)(Q) of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(1)(Q).

*(2)     Termination Was in T.E.'s Best Interest*

Lamb also argues the evidence is insufficient because the Department failed to prove termination of his parental rights was in T.E.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2011). There is a strong presumption that the best interest of a child is served by keeping the child with a parent. TEX. FAM. CODE ANN. § 153.131(b) (West 2008). It is further presumed that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). While it is imperative for courts "to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

In reviewing the sufficiency of the evidence to support the second prong required for termination, we apply the nonexclusive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of individuals seeking custody, (5) the programs

available to assist the parties seeking custody, (6) the plans for the child by individuals seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions committed by the parent. *Id.*

A party seeking an involuntary termination of parental rights is not required to prove all nine *Holley* factors "as a condition precedent" to termination. *C.H.*, 89 S.W.3d at 27. Undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *Id.* Evidence that establishes one or more statutory grounds for termination also can be probative evidence that termination is in the best interest of the child. *Id.* at 28.

Because T.E. was three years old at the time of trial and has never met her father, we cannot with certainty determine her desires. There is, however, evidence that T.E. has bonded with her foster parents, and that supports a best-interest finding. *See In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The fact-finder can also consider a child's acknowledgment of a foster parent as his or her parent in determining the child's desires. *In re M.D.S.*, 1 S.W.3d 190, 200 (Tex. App.—Amarillo 1999, no pet.); *see also In re J.M.*, 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.) (evidence that children too young to express desires have bonded with foster family).

T.E. lives with her maternal grandmother and step-grandfather. Celeste Young, the executive director for Court Appointed Special Advocates of Hunt County, testified that T.E. was doing very well in the home and that all of her needs were being met. T.E.'s grandparents express a commitment to adopting T.E. and to meeting her needs for the rest of her life. Nick Sanchez, T.E.'s step-grandfather, testified that, as far as T.E. knows, Nick is her father. This evidence, while not a direct statement of her desires, is at least some evidence that T.E. has bonded with her foster parents. That, too, supports a best-interest finding.

The need for permanence is a paramount consideration for the child's present and future physical and emotional needs. Without stability, income, or a home, a parent is unable to provide for a child's emotional and physical needs. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). Moreover, while criminal convictions alone do not necessarily lead to the conclusion that termination of parental rights is in the child's best interest, a pattern of criminal actions leading to incarceration is a factor to be considered. *In re S.K.A.*, 236 S.W.3d 875, 905 (Tex. App.—Texarkana 2007, pet. denied).

The evidence here indicates that Lamb has been incarcerated all of T.E.'s life, and has, in fact, spent a good deal of his adult life behind bars.[7] At the time of T.E.'s conception, Lamb was

---

[7]Lamb is currently twenty-seven years old. At the age of twenty, Lamb was imprisoned for two years for the crime of indecency with a child. After having served this sentence, Lamb assaulted his girlfriend with a knife and struck her in the head with his fist. As a result of this conduct, Lamb pled "guilty" to the charge of aggravated assault with a deadly weapon in December 2006, and was sentenced to serve six years in prison. Lamb was also sentenced to serve six years in prison in November 2006 for tampering with physical evidence. This conviction emanated from an incident in which Lamb swallowed what was believed to be a baggie of crack cocaine.

unemployed and without a home; Lamb was arrested shortly thereafter. Lamb's pattern of criminal activity, his unemployment, drug use, violence, and inappropriate conduct with a child all support the finding that termination of his parental rights is in T.E.'s best interest. *See In re R.R.*, 294 S.W.3d 213, 236–37 (Tex. App.—Fort Worth 2009, no pet.); *S.K.A.*, 236 S.W.3d at 903–05.

Nothing in the record speaks directly to Lamb's parenting abilities. Because Lamb has been in prison throughout T.E.'s life, he has had no contact with her. Lamb has, in the past, acted in a sexually inappropriate way with a child—hence his imprisonment for indecency with a child by exposure. This conviction, in combination with Lamb's past acts of violence, demonstrates a probable lack of parenting abilities for T.E., and weighs in favor of termination of Lamb's parental rights.

During his prison stay, Lamb completed a program called "Changes" that involved anger management, substance abuse education, parenting classes, and re-entrance into society. This is some evidence that Lamb has made an effort to better himself in order to parent T.E. and weighs against termination.

The stability of the home is another consideration in the best-interest analysis. The goal of establishing a stable, permanent home for a child is a compelling state interest. *In re C.E.K.*, 214 S.W.3d 492, 498 (Tex. App.—Dallas 2006, no pet.). T.E.'s maternal grandparents, with whom the Department placed T.E. after removal from her mother's home, plan to adopt T.E. and her sister, A.E. The record, therefore, indicates that the grandparents have a plan for T.E. once

10

Lamb's parental rights are terminated. The record further indicates that the grandparents have provided a stable home for T.E., who will be able to remain with A.E. in that home.[8] Conversely, Lamb offers no plans to provide a home for T.E. Instead, Lamb proposes visitation with T.E. in her grandparents' home. This proposal would result in T.E.'s continuation in foster care and would prevent adoption by her grandparents. Future plans and the provision of a stable home for T.E. weigh in favor of termination.

Acts and omissions by Lamb which indicate that any future relationship with T.E. may not be a proper one include three criminal convictions, one of which was based on an improper relationship with a child, the failure to register as a sex offender, suspected use of illegal drugs, and the failure to secure employment. Lamb offers no excuses for these acts and omissions. This factor weighs in favor of termination.

In this case, each of the *Holley* factors weighs in favor of termination, save one—while in prison, Lamb took advantage of a program available to assist him in seeking custody of T.E. However, this single factor is overshadowed by all remaining considerations, which weigh in favor of concluding termination of Lamb's parental rights is in T.E.'s best interest.

It is not in T.E.'s best interest to remain in limbo in the foster care system simply to permit Lamb the opportunity to visit her from time to time, especially when T.E.'s grandparents stand ready, willing, and able to adopt T.E. and to provide her with a stable and loving home where T.E. can grow up with her sister. In light of this evidence, the trial court could have reasonably formed

---

[8]T.E.'s mother testified that T.E. and A.E. are best friends.

a firm belief or conviction that termination of Lamb's parental rights was in T.E.'s best interest. Accordingly, the evidence is both legally and factually sufficient to support the trial court's finding that termination of Lamb's parental rights was in T.E.'s best interest.

*(3)    Lamb's Attorney Was Not Ineffective*

Lamb also claims that his counsel was ineffective.[9] Indigent persons in parental-rights termination cases enjoy a statutory right to counsel. TEX. FAM. CODE ANN. § 107.013(a)(1) (West Supp. 2011). That statutory right to counsel embodies the right to effective counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). The standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), applies in dependency cases such as this. *See M.S.*, 115 S.W.3d at 545.

The *Strickland* standard applies a two-pronged test to determine whether counsel is ineffective, requiring the party asserting ineffective assistance to prove by a preponderance of the evidence that (1) his or her counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 688; *M.S.*, 115 S.W.3d at 545. We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and was motivated by sound trial

---

[9]We note that this ground was not raised in Lamb's statement of points filed April 21, 2011. This Court has recognized an exception to such requirement when an appellant raises a claim of ineffective assistance of counsel on appeal. *See In re K.L.L.H.*, No. 06-09-00067-CV, 2010 WL 87043, at *5 (Tex. App.—Texarkana Jan. 12, 2010, no pet.) (mem. op.) (citing *In re J.O.A.*, 283 S.W.3d 336, 339 (Tex. 2009)). Since the time this appeal was filed, the Legislature has repealed those provisions of Section 263.405 of the Texas Family Code which required the filing of a statement of points on appeal of a final termination order. TEX. FAM. CODE ANN. § 263.405 (West 2008) (amended by Act of May 5, 2011, 82nd Leg., R.S., ch. 75, §§ 4–5, eff. Sept. 1, 2011).

12

strategy. *M.S.*, 115 S.W.3d at 545. Where, as here, the record is silent as to the reason that counsel failed to lodge certain objections or take certain actions, we assume it was due to any strategic motivation that can be imagined; and, in order to succeed in his complaint, Lamb is obligated to rebut the presumption that trial counsel's actions were in some way reasonable. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007).

Lamb claims his trial counsel was ineffective for failing to object to the Department's Exhibit 1 on the basis that it was irrelevant to the sole ground of termination.[10] Lamb further maintains counsel was ineffective in failing to raise a Rule 403 objection to Exhibit 1.

Exhibit 1 consists of (1) an indictment of Lamb by the grand jury of Harris County on the felony charge of aggravated sexual assault of a child, (2) a complaint by the assistant district attorney of Harris County against Lamb, alleging commission of the felony offense of aggravated sexual assault,[11] and (3) a judgment based on Lamb's plea of "guilty" to the offense of indecency with a child, showing a two-year term of confinement.[12] Lamb claims his case was prejudiced by the highly inflammatory nature of this irrelevant evidence.[13]

The Department claims counsel's failure to object to this exhibit on the basis of relevance

---

[10]As previously discussed, the sole ground of termination was Lamb's knowing engagement "in criminal conduct that has resulted in" his conviction, "imprisonment and inability to care for [T.E.] for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(1)(Q).

[11]Both the indictment and the complaint refer to the same offense, alleged to have occurred May 8, 2003.

[12]The judgment lists the terms of the plea bargain as "2 years TDC. State moves reduce from F-1."

[13]Lamb does not assert that, but for this alleged unprofessional error, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

13

was not deficient because evidence of prior convictions is relevant to the question of the likelihood of parole, hence, to the claim by Lamb that he would not be spending two years in prison because of release on parole. *See R.A.L.*, 291 S.W.3d at 443 (in evaluating sufficiency of evidence to support finding under Section 161.001(1)(Q), jury may consider evidence of parole in light of past multiple convictions and parole denial). Moreover, evidence of criminal conduct, incarceration, and a conviction for indecency with a child may be taken into consideration by a fact-finder in determining the best interest of the child. *See R.R.*, 294 S.W.3d at 236–37; *S.K.A.*, 236 S.W.3d at 903–05.

Exhibit 1 was thus relevant to Lamb's defense to the sole ground of termination alleged, as well as to the issue of whether it was in T.E.'s best interest to terminate Lamb's parental rights. It is thus reasonable to believe that a relevancy objection to this exhibit would likely have been overruled. Certainly, we cannot say that the failure to raise a relevancy objection here fell below an objective standard of reasonableness.

Lamb also complains that trial counsel failed to object to the admission of Exhibit 1 on the basis of Rule 403 of the Texas Rules of Evidence. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

TEX. R. EVID. 403. The fact that evidence has some prejudicial effect is insufficient to warrant its exclusion. *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759 (Tex. App.—Corpus Christi 1999,

pet. denied). To be excluded, evidence must not only create a danger of unfair prejudice, but that danger must substantially outweigh its relevance. *Castro v. Cammerino*, 186 S.W.3d 671, 682 (Tex. App.—Dallas 2006, pet. denied). Because the best interest of the child must always be the primary consideration in a parental rights termination case, evidence relevant to the best interest of the child will seldom be excluded under Rule 403. *Garza v. Garza*, 217 S.W.3d 538, 555 (Tex. App.—San Antonio 2006, no pet.) (Rule 403 is extraordinary remedy to be used sparingly in parental rights termination case); *In re J.W.*, 113 S.W.3d 605, 612 (Tex. App.—Dallas 2003, pet. denied); *In re C.Q.T.M.*, 25 S.W.3d 730, 736 (Tex. App.—Waco 2000, pet. denied). The decision to admit or exclude evidence subject to a Rule 403 objection lies within the sound discretion of the trial court. *Decker v. Hatfield*, 798 S.W.2d 637, 639 (Tex. App.—Eastland 1990, writ dism'd w.o.j.).

Because evidence is rarely excluded under Rule 403 in parental rights termination cases, and in light of the trial court's discretion in determining admissibility, trial counsel's failure to object to Exhibit 1 does not amount to deficient performance. We will not second guess counsel's judgment on this issue.

Lamb failed to establish defective performance by trial counsel.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

15

Date Submitted:     October 24, 2011
Date Decided:       November 23, 2011