Rita B. WALLACE, Appellant,

v.

Charles Elwin FITCH, Appellee.

No. 16621.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 5, 1976.

Daniel Bruce Beeler, Houston, for appellant.

Smith, Schulman, Rawitscher & Cordray, Jack J. Rawitscher, Houston, for appellee.

PEDEN, Justice.

Mrs. Rita Wallace appeals from an order designating her former husband as managing conservator of their child after a jury trial. Mr. Fitch, the child's father, initiated this proceeding by filing a motion pursuant to Sec. 14.08, Texas Family Code.

The father alleged in his motion that because of a substantial and material change of circumstances since the last order appointing a managing conservator, the best interest of the child would be served by the requested change, stating that the mother had so neglected and permitted mistreatment of the child as to damage his health and well-being, and setting forth alleged circumstances. Mrs. Wallace answered by general denial. The only special issue and the jury's answer to it were:

"Do you find from a preponderance of the evidence that since the former decree granting custody of the minor child, John Cooper Fitch to Rita B. Wallace, there has occurred such a material change of conditions that the best interest of said minor child require a change of custody to Charles Elwin Fitch?

"Answer: 'We do' or 'We do not'. ANSWER: __we do__

"In connection with the foregoing special issue you are instructed that not every change of condition justifies the modification of a former decree of divorce awarding the custody of the minor child. Such changed conditions must be such as affect the welfare and best interests of the child and be of such nature that to leave the custody of the child as previously adjudicated would be injurious to the welfare of the child and requires that such custody be changed.

"In connection with the foregoing special issue you are further instructed that the sex of the parties shall play no part in your deliberations and you shall give no consideration to same."

The judgment appointing Mr. Fitch managing conservator of the child was signed and entered on June 4, 1975.

The appellant's points of error are that the trial court erred in overruling her motion for new trial in that 1) there was no evidence to support the jury verdict, 2) the evidence was factually insufficient to support the jury verdict, 3) the father failed to plead and prove a material change in condi-

tions of the child, and 4) the trial court erred in failing to grant the mother's motion for instructed verdict. We will consider the first point as a legal insufficiency point and the second as a great weight point.

We review the evidence. Dr. Dana Williams, a pediatrician, testified that when he examined John Cooper Fitch on July 18, 1974, in the presence of Mrs. Wallace and Mr. Fitch, he discovered two lesions on the instep of the child's right foot that looked like burns. In his opinion there was no way possible, based upon a reasonable medical probability, that the lesions could have been mosquito bites. He was unable to get a history from the child.

The father, Mr. Charles Fitch, testified that he took photographs of the child's foot the day after he took him to the doctor. They were admitted in evidence. When his son, aged three-and-a-half, told him how he received the marks on his foot, Mr. Fitch confronted his ex-wife and called Dr. Williams to make the appointment to check out what had caused them. Mrs. Wallace told him she thought they were mosquito bites that he had gotten on a recent trip. Mr. Fitch lives with his present wife in a three bedroom home in West University Place and feels he is financially able to care for the child. His mother, Mrs. Melba Fitch, testified that when the child told her how he had received the marks on his foot she was concerned for his welfare.

Betty Tate, a former wife of the child's stepfather, Ed Wallace, testified by deposition. She was his fourth and last wife before he married the appellant. She divorced him in 1973 after living with him a total of five weeks. She had had three children by a prior marriage. She and Wallace separated because they could not agree on how her children should be raised. He did not allow them to talk at the table or play in the house, not even in their own rooms. Her son, who was not yet three years old, was slapped on the hand by Mr. Wallace for putting his hand in his plate. She felt that he was not a fit stepfather for her children and that he did not want her children to have any friends. He complained when she gave their friends some cake. On his days off he would start drinking beer as soon as he finished breakfast, and he was drunk more than fifty per cent of the time. On cross-examination Mrs. Tate said that her children were the most important thing to her and that she made Mr. Wallace aware of that fact before their marriage.

Dr. Jack Bevil, a general practitioner, was called to testify by the appellant. He examined the child the day after Dr. Williams had seen him. He was of the opinion that the lesions were either the result of a bug bite or some healing impetigo, but they could have been started by a burn.

Mrs. Rita Wallace, the appellant, testified that she and her husband, Ed Wallace, now reside in Des Moines, Illinois, a suburb of Chicago. She is an x-ray technologist and teaches at DePaul University. They were at an outdoor barbecue in Chicago with friends of her husband when the child received the two lesions, plus two more on his back, and she noticed them the next day. They seemed to get worse, and she put some medicine on them. Ed Wallace does not abuse the boy. He has spanked him about three times with his hand, but only when there was a reason. The boy has been spanked for talking back to her. There is no friction between Wallace and her son and he does not appear to be scared of Wallace. Wallace would have a couple of beers on weekends, and one or two during the week. She has never seen him drink more than four highballs at a party. Neither she nor Ed Wallace smokes. She dated Ed Wallace for nine months before his divorce from his fourth wife.

Mrs. Estelene Denny testified that she married Ed Wallace in December of 1952, and they had three children during their marriage. He was a moderate drinker, was not quick-tempered and did not beat their children. He supports them regularly. He visited their children three times in the last twelve months and twice during 1973.

Mr. Ed Wallace, Rita's present husband, said he did not ever burn her little boy. He did not cause the lesions. He had been married five times, two of them to one lady. He said he is not quick tempered and only spanks the child when he disobeys his mother. He gave up cigarette smoking in February or March (several months before the lesions appeared) at the request of his present wife. The boy has his own bedroom in their apartment. He admitted on cross-examination that he did not contribute to the support of his adopted daughter (of a prior marriage) until his former wife brought court charges, but his payments are current now. He said he did not drink excessively when married to Betty Tate. He does not drink every day. Before 1973 he was drunk on few occasions. He doesn't normally keep a can of beer in his hand all day. He drinks, on an average, at least twice a week. He has been intoxicated on occasion in the last two years. He has a good relationship with John Cooper Fitch.

Mr. Bruce Beeler, who represented Mrs. Wallace only on appeal, was called a a witness on her behalf. She is his niece, and he has known Mr. Fitch well ever since they attended law school together about ten years ago. He visited with Rita Wallace, Ed Wallace, and John Cooper Fitch every week or so for several months before they moved to Chicago. He never did see Ed Wallace abuse or mistreat the boy; they had the best of rapport. He didn't see the lesions. He has never seen Wallace intoxicated, but has seen him have a few drinks. In the early summer of 1974, Ed and Rita Wallace accompanied Bruce Beeler and his wife to the Bahamas on a vacation.

Section 14.08 of the Family Code has now been amended in some respects. It provided at all times pertinent to this cause (prior to September 1, 1975), that one who moved for modification of a court order providing for managing conservatorship of a child had the burden of showing that the circumstances of the child had materially and substantially changed and that modification would be in the best interest of the child.

We must first determine whether a material and substantial change of conditions was shown to have occurred between the date of the divorce decree (July 16, 1973) and the filing date of the instant proceedings (July 19, 1974). If so, we review the decision of the trial court and jury that the change of conditions was so material that the best interest of the child requires a change in his custody. *Bukovich v. Bukovich*, 399 S.W.2d 528 (Tex.1966).

Some changes of conditions which have been held to be material are (1) marriage of one of the parties; (2) poisoning of the mind of the child by one of the parents; (3) one of the parties becoming an improper person for the custody; (4) changes in the home surroundings; (5) one of the parties becoming mean to the child. *Leonard v. Leonard*, 218 S.W.2d 296 (Tex.Civ.App.1949, no writit).

 In our case the only evidence of probative force to support the jury's verdict arose from the remarriage of the custodial parent after she was named managing conservator of her son. Thus the child was placed in a new relationship, one with his stepfather. A marriage of the managing conservator that places the child with a person who is not a suitable and proper stepparent may result in such a material change in conditions that it would be in the best interest of the child to change managing conservators. Although we might not have made the same decision, there was evidence from which the jury was entitled to conclude that since Rita Wallace married Ed Wallace it would be in the best interest of John Cooper Fitch to make his father the managing conservator. An adult person's future conduct may well be measured by his recent deliberate past conduct as it may be related to the same or a similar situation. *De Llano v. Moran*, 160 Tex. 490, 333 S.W.2d 359 (1960). The evidence of acts from which the jury could decide whether Ed Wallace has recently been and probably is a suitable stepfather is sharply conflicting, and the jury was the judge of the

credibility of the witnesses. There was only innuendo, no evidence that Mr. Wallace intentionally burned the boy, but the jury was entitled to believe that his paternal grandmother and his father were greatly concerned by whatever he told them about the two lesions that looked like burns, and it could have decided that Mr. and Mrs. Wallace's neglect contributed to causing the lesions.

As the court stated in *Dohrmann v. Chandler*, 435 S.W.2d 232 at 237 (Tex.Civ.App. 1968, no writ) citing *Mumma v. Aguirre*, 364 S.W.2d 220 (Tex.1963) and *Bukovich v. Bukovich*, supra:

> "There is no definite guideline as to what evidence constitutes a material change of circumstances or conditions that affect the welfare of a small child. However, we believe that the same must be decided in each case according to the circumstances as they arise. We know that the jury had an opportunity to observe and evaluate the personalities of the contending claimants, to weigh the credibility of their testimony, and to assess the physical, mental, moral and emotional needs of the child. The jury's verdict binding by statute the trial court's judgment also binds our hands when supported by evidence. The trial court who also observed all of the evidence, refused to grant a new trial, and as such did not abuse its discretion."

We affirm the judgment of the trial court.