**In the Interest of C.Q.T.M., a Minor Child.**

**No. 10–99–193–CV.**

Court of Appeals of Texas, Waco.

July 19, 2000.

Rehearing Overruled Aug. 23, 2000.

---

James R. Angel, Waco, for appellant.

Elizabeth L. Gonzales, Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

REX D. DAVIS, Chief Justice.

Glynda Marie Floyd filed a motion to modify the conservatorship of her son C.Q.T.M., alleging that she, rather than his father Richard Dean Mitchell, should be his sole managing conservator. A jury failed to find that C.Q.T.M.'s conservatorship should be modified. Floyd claims in five issues that the court abused its discretion by: (1) admitting in evidence a contempt judgment rendered against Floyd's husband for failure to pay child support for his own child; (2) admitting in evidence an affidavit executed by her husband relinquishing his parental rights to the child for whom he owed child support; (3) overruling her objection to a question posed by Mitchell's counsel about her discharge from a felony probation; and (4) refusing to allow cross-examination of Mitchell's wife regarding her prior marriages (two issues).

## BACKGROUND

C.Q.T.M. was born to Floyd in September 1992. Floyd sued Mitchell three months later to establish paternity. Apparently the parties reached an agreement concerning Mitchell's paternity and had a jury trial in February–March 1996 on the issue of custody. The jury recommended that Mitchell be appointed sole managing conservator, and the court signed a judg-ment in accordance with the verdict in August of that year.

After this decree, both Floyd and Mitchell married their present spouses. Floyd filed a motion to modify C.Q.T.M.'s conservatorship in March 1998, seeking the appointment of herself as C.Q.T.M.'s sole managing conservator. The parties tried the matter before a jury. Much of the dispute in this appeal rests on the admission of evidence concerning Floyd's husband Wayne (C.Q.T.M.'s step-father) and the exclusion of evidence concerning Mitchell's wife Rena (C.Q.T.M.'s step-mother). The court admitted in evidence a March 1996 affidavit in which Wayne relinquished his parental rights to a son and a September 1996 judgment holding Wayne in contempt of court for failure to pay child support for that son. The court excluded from evidence testimony that Rena had been married four times prior to her marriage to Mitchell.

## FLOYD'S DISCHARGE FROM PROBATION

Floyd argues in her third issue that the court abused its discretion by failing to instruct the jury to disregard cross-examination by Mitchell's counsel about her discharge from a "felony aggravated assault probation." However, Floyd never objected to the question and did not request an instruction to disregard the question or her affirmative response until the next morning, after she had completed her testimony, two other witnesses had testified, and she had rested her case-in-chief. Because Floyd failed to make a timely objection or request, we conclude that she has failed to preserve this issue for our review. *See* TEX.R.APP. P. 33.1(a); *In re M.D.S.*, 1 S.W.3d 190, 202 (Tex.App.—Amarillo 1999, no pet.); *see also Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g) (applying former appellate rule 52(a)). Accordingly, we overrule her third issue.

## STEP–PARENT EVIDENCE

Floyd contends in her first and second issues respectively that the court abused

its discretion by admitting in evidence the contempt judgment rendered against Wayne and the affidavit relinquishing his parental rights to his son because the evidence is irrelevant. Floyd argues in the alternative that the court abused its discretion in admitting this evidence because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. She avers in her fourth and fifth issues respectively that the court abused its discretion by granting Mitchell's motion in limine requesting exclusion from the evidence of any testimony concerning Rena's four prior marriages and by excluding such evidence when offered at trial.

### PERTINENT LAW

■ To obtain modification of a sole managing conservatorship, a petitioner must demonstrate that: (1) a material change of circumstances has occurred since rendition of the prior custody order; and (2) appointment of the petitioner would be a positive improvement for the child. TEX. FAM.CODE ANN. § 156.101(a) (Vernon Supp.2000). As with all suits regarding conservatorship of a child, "[t]he best interest of the child shall always be the primary consideration of the court" in a proceeding to replace one sole managing conservator with another. *See id.* § 153.002 (Vernon 1996); *In re M.R.*, 975 S.W.2d 51, 53 (Tex.App.—San Antonio 1998, pet. denied); *In re Marriage of Chandler*, 914 S.W.2d 252, 253–54 (Tex. App.—Amarillo 1996, no writ).[1]

■ When considering whether a material change of circumstances has occurred, Texas courts have deemed the remarriage of one or both parents to be a

pertinent factor. *Barron v. Bastow*, 601 S.W.2d 213, 214–15 (Tex.Civ.App.—Austin 1980, writ dism'd); *T.A.B. v. W.L.B.*, 598 S.W.2d 936, 939–40 (Tex.Civ.App.—El Paso), *writ ref'd n.r.e.*, 606 S.W.2d 695 (Tex.1980) (per curiam); *Wallace v. Fitch*, 533 S.W.2d 164, 167 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ) (citing *Leonard v. Leonard*, 218 S.W.2d 296, 301 (Tex. Civ.App.—San Antonio 1949, no writ)). Texas courts uniformly recognize that the parental abilities of the parent seeking custody and the stability of her home are factors to be considered in determining what is in the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976); *Lowe v. Lowe*, 971 S.W.2d 720, 724 (Tex.App.—Houston [14th Dist.] 1998, pet. denied).

■ Accordingly, evidence regarding the conduct and abilities of a step-parent can be relevant and admissible in a suit seeking modification of conservatorship. *Wallace*, 533 S.W.2d at 167–68; *accord Barron*, 601 S.W.2d at 214–15; *T.A.B.*, 598 S.W.2d at 939–40; *Colbert v. Stokes*, 581 S.W.2d 770, 771–72 (Tex.Civ.App.—Austin 1979, no writ); *Evans v. Tarrant County Child Welfare Unit*, 550 S.W.2d 144, 145–46 (Tex.Civ.App.—Fort Worth 1977, no writ). Such evidence can be relevant to the issues of whether awarding sole managing conservatorship of the child to the spouse of that step-parent would be a positive improvement for the child or whether such a change of conservatorship would be in the best interest of the child. *See* TEX. FAM.CODE ANN. §§ 153.002, 156.101(a)(2).

■ Section 156.101(a)(1) requires a material change of circumstances subsequent

---

1. However, we note that section 156.101(a) makes no reference to the best interest of the child, even though comparable provisions regarding other modifications of conservatorship (*e.g.*, sole to joint) expressly require that modification not only be a positive improvement for the child but also in the best interest of the child. *Compare* TEX. FAM.CODE ANN. § 156.101(a) (Vernon Supp.2000) *with* TEX. FAM.CODE ANN. § 156.101(b)(2) (Vernon Supp. 2000), §§ 156.102(b)(2), (3), 156.103,

156.104(a)(3), 156.202(2), 156.203(2) (Vernon 1996). Nevertheless, the legislative mandate is clear that "[t]he best interest of the child *shall always be* the primary consideration of the court." *Id.* § 153.002 (Vernon 1996) (emphasis added); *accord In re M.R.*, 975 S.W.2d 51, 53 (Tex.App.—San Antonio 1998, pet. denied); *In re Marriage of Chandler*, 914 S.W.2d 252, 253–54 (Tex.App.—Amarillo 1996, no writ).

to the rendition of the custody decree sought to be modified. TEX. FAM.CODE ANN. § 156.101(a)(1). This is so because the prior decree "is *res judicata* of the best interests of the child as to conditions existing at that time." *Scroggins v. Scroggins,* 753 S.W.2d 830, 832 (Tex.App.— Houston [1st Dist.] 1988, no writ) (citing *Knowles v. Grimes,* 437 S.W.2d 816, 817 (Tex.1969)); *accord Gibbs v. Greenwood,* 651 S.W.2d 377, 379 (Tex.App.—Austin 1983, no writ). Accordingly, evidence regarding changed circumstances is generally relevant only insofar as it reflects a change of circumstances occurring after the date of rendition of the decree sought to be modified. *Dunker v. Dunker,* 659 S.W.2d 106, 108 (Tex.App.—Houston [14th Dist.] 1983, no writ); *Gibbs,* 651 S.W.2d at 379; *Carver v. Carver,* 457 S.W.2d 591, 592 (Tex.Civ.App.—Waco 1970, no writ).

 *Res judicata* bars relitigation between the same parties or those in privity with them of claims finally adjudicated in a prior proceeding. *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996); *Glass v. Prcin,* 3 S.W.3d 135, 137 (Tex.App.—Amarillo 1999, pet. denied); *McGee v. McGee,* 936 S.W.2d 360, 364 (Tex.App.—Waco 1996, writ denied). Although there is no definition of "privity" which can be applied uniformly in every case, privity generally exists for *res judicata* purposes when: (1) a party to a subsequent proceeding exercised control over the prior proceeding though not a party thereto; (2) the interests of the subsequent party were represented by another in the prior proceeding; or (3) the subsequent party is a successor in interest to a party to the prior proceeding. *Amstadt,* 919 S.W.2d at 653; *Getty Oil Co. v. Insurance Co. of N. Am.,* 845 S.W.2d 794, 800–01 (Tex.1992).

 If a parent becomes involved in a relationship with another after entry of a custody decree and then marries that person, the parent's spouse would not have been a party to the prior custody litigation nor in privity with the parent who was a party to that litigation. *Cf. Getty Oil Co.,* 845 S.W.2d at 801 (*res judicata* does not bar assertion of claim in subsequent proceeding which could not have been raised in prior proceeding). For this reason, *res judicata* would not bar the introduction of evidence regarding the conduct and parental abilities of that spouse, even if such evidence concerned events occurring prior to rendition of the previous custody decree.

 To be more precise, evidence of a parent's subsequent marriage to another can constitute a relevant, material change of circumstances after rendition of the decree sought to be modified. *See Barron,* 601 S.W.2d at 214–15; *T.A.B.,* 598 S.W.2d at 939–40; *Wallace,* 533 S.W.2d at 167; *see also* TEX. FAM.CODE ANN. § 156.101(a)(1). Evidence of that stepparent's conduct and parenting abilities would not be subject to exclusion solely because such evidence concerns events which occurred before rendition of the prior decree.[2] *See Wallace,* 533 S.W.2d at 166–68.

Thus, the court in *Wallace* considered evidence that the step-father had been married four times prior to his marriage to the mother of the child the subject of the suit and reviewed testimony from two of his former wives. *See id.* One of these former spouses testified that she did not believe him to be "a fit stepfather for her children" because of their divergent philosophies regarding the manner in which her children should be raised, the manner in which he disciplined her two-year-old son, and his excessive consumption of beer (*i.e.,* in her view, "he was drunk more than fifty per cent of the time"). The other testified that "[h]e was a moderate drinker, was not quick-tempered and did not beat their children." He supported them "regularly" and visited the children two or three times each year. *Id.* at 166.

2. Of course, such evidence, though relevant, may be subject to exclusion for other reasons.

The step-father admitted during cross-examination that he did not pay child support for another child until the mother of that child instituted legal proceedings to obtain such payment but denied excessive drinking except "on few occasions." *Id.* at 167. Because of the "sharply conflicting" evidence regarding the suitability of the stepfather, the court rejected the mother's "no evidence" and factual sufficiency challenges to the jury's verdict that it would be in the child's best interest for a change of custody from mother to father. *Id.* at 167–68.

### APPLICATION

### 1. Evidence Regarding Wayne

Floyd contends in her first and second issues respectively that evidence of the contempt judgment rendered against Wayne and the affidavit relinquishing his parental rights to his son is irrelevant. Floyd's relevance challenge relies primarily on the "general rule" in Texas "that prior acts or transactions by one of the parties with other persons are irrelevant, immaterial and highly prejudicial and in violation of the rule that *res inter alios* acts are incompetent evidence, particularly in a civil case." *Texas Farm Bureau Mut. Ins. Co. v. Baker,* 596 S.W.2d 639, 642 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.). She also claims that the evidence is irrelevant because it concerns the character of a non-party and because it was offered in an effort to prejudice her on a theory of guilt by association.

■ We review a trial court's admission or exclusion of evidence for an abuse of discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995); *McEwen v. Wal–Mart Stores, Inc.,* 975 S.W.2d 25, 27 (Tex.App.—San Antonio 1998, pet. denied). The evidence that Wayne has been held in contempt of court for failure to pay child support and voluntarily relinquished his parental rights to the child for whom he owed support bears relevance to the relationship he would have with C.Q.T.M., his parenting abilities, and the stability of the home Floyd and he have. Thus, the evidence is relevant to the issues of whether awarding sole managing conservatorship of C.Q.T.M. to Floyd would be a positive improvement for C.Q.T.M. or whether such a change of conservatorship would be in C.Q.T.M.'s best interest. *See Wallace,* 533 S.W.2d at 167–68.

Because the evidence in question is relevant to these issues, we believe the general rule prohibiting the admission of *res inter alios* acts must bow in suits affecting the parent-child relationship, particularly insofar as the best interest of the child is at stake. *See* TEX. FAM.CODE ANN. § 153.002. Because the evidence is admissible and relevant for these purposes, we reject Floyd's argument that it constitutes inadmissible character evidence. Floyd's guilt-by-association argument is premised on criminal jurisprudence and constitutes a similar assertion that the evidence in question is improper character evidence. *See Koller v. State,* 518 S.W.2d 373, 377 (Tex. Crim.App.1975). Because this is not a criminal case and because the evidence is relevant to issues other than character, we reject this contention. For these reasons, we conclude that the trial court did not abuse its discretion by admitting the evidence in question over Floyd's relevance objection.

■ Floyd argues alternatively that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 403; *Cook v. Sabio Oil & Gas, Inc.,* 972 S.W.2d 106, 111 (Tex.App.—Waco 1998, pet. denied); *Trevino v. Texas Dep't of Protective & Regulatory Servs.,* 893 S.W.2d 243, 248 (Tex.App.—Austin 1995, no writ). Because the best interest of the child must be the court's primary consideration, Rule 403 "is an extraordinary remedy that must be used sparingly." *Trevino,* 893 S.W.2d at 248 (quoting *LSR Joint Venture No. 2 v. Callewart,* 837 S.W.2d 693, 698 (Tex. App.—Dallas 1992, writ denied)).

Floyd argues that the admission of the contempt judgment rendered in another suit is unfairly prejudicial because it was signed by the same judge who presided over the trial to modify C.Q.T.M.'s conservatorship, thus communicating the trial court's opinion of Wayne's suitability as a step-parent to the jury. Although, some of the jurors may have divined from this evidence that the presiding judge did not consider Wayne a model step-parent, we cannot say that this possible prejudicial effect is unfair or substantially outweighs the relevance of the evidence. *See Trevino,* 893 S.W.2d at 249.

Floyd presents no concise argument in her brief regarding why she considers the admission of the relinquishment affidavit unfairly prejudicial. She contends in general terms that the admission of *res inter alios* acts is generally "highly prejudicial," that evidence regarding the character of a non-party is inadmissible, and that the admission of such evidence prejudices her on a theory of guilt by association. We have already rejected each of these arguments.

For the reasons stated, we conclude that the contempt judgment and the relinquishment affidavit are relevant and that their probative value is not substantially outweighed by the danger of unfair prejudice. Accordingly, we overrule Floyd's first and second issues.

### 2. Evidence Regarding Rena

■ Floyd complains in her fourth issue that the court abused its discretion by sustaining Mitchell's motion in limine, thereby restricting her from offering evidence of Rena's four prior marriages without first approaching the bench. However, a trial court's ruling on a motion in limine is not an appealable order. *State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 866 (Tex.1988); *Boswell v. Farm & Home Sav. Ass'n,* 894 S.W.2d 761, 770 (Tex. App.—Fort Worth 1994, writ denied). Thus, we overrule Floyd's fourth issue.

■ Floyd avers in her fifth issue that the court abused its discretion by excluding evidence of Rena's four prior marriages because such evidence is relevant to the best interest of the child. Mitchell responds that the exclusion was warranted because Floyd offered the evidence only for impeachment purposes and only prior convictions are admissible for such purposes. *See* Tex.R. Evid. 608(b).

Floyd made the following offer of proof:

THE COURT: I will allow you to make your bill at this time.

COUNSEL: Mrs. Mitchell, do you always tell the truth?

MITCHELL: Yes, sir.

COUNSEL: Isn't it a fact that you have had four prior marriages that ended in divorce?

MITCHELL: Yes, sir.

COUNSEL: And Mr. Mitchell here is your fifth spouse?

MITCHELL: Yes, sir.

COUNSEL: That's all. Your Honor, we tender this evidence along with her statement that she's always truthful, and I think the evidence of four prior solemns till death do us part is admissible.

After hearing this offer of proof, the trial court held the testimony inadmissible.

■ To preserve error from a ruling excluding evidence, a party must make a timely request for admission of the evidence which complies with the Rules of Evidence. *See* Tex.R.App. P. 33.1(a)(1)(B). Rule of Evidence 103(a)(2) requires the proponent of the excluded evidence to make an offer of proof to preserve the issue. *See* Tex.R. Evid. 103(a)(2). In this offer of proof, "the party must specify the purpose for which the evidence is offered and give the trial judge reasons why the evidence is admissible." *Continental Coffee Prods. Co. v. Cazarez,* 903 S.W.2d 70, 80 (Tex.App.—Houston [14th Dist.] 1995), *rev'd in part on other grounds,* 937 S.W.2d 444 (Tex.1996); *accord Vandever v. Goettee,* 678 S.W.2d 630, 635 (Tex.App.—Hous-

738

ton [14th Dist.] 1984, writ ref'd n.r.e.). The arguments asserted at trial by the proponent of the evidence must comport with the arguments asserted on appeal. Otherwise, the issue is not properly preserved. *See In re T.R.S.*, 931 S.W.2d 756, 758 (Tex.App.—Waco 1996, no writ); *Holland v. Hayden*, 901 S.W.2d 763, 765 (Tex. App.—Houston [14th Dist.] 1995, writ denied).

Giving a generous reading to Floyd's offer of proof, it appears that this evidence was offered to impeach Rena's character for truthfulness. This reading is confirmed by counsel's statement in the pretrial hearing on Mitchell's motion in limine that the background of "any witness" would be "admissible for the jury to pass on credibility." Because Floyd's theory of admissibility at trial does not comport with her argument on appeal, we conclude that the matter has not been properly preserved for our review. *See T.R.S.*, 931 S.W.2d at 758; *Holland*, 901 S.W.2d at 765. Accordingly, we overrule Floyd's fifth issue.

We affirm the judgment.