**In The**

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*
_____

### NO. 09-12-00222-CV
_____

### IN THE INTEREST OF E.E.L.

**On Appeal from the County Court at Law**
**Polk County, Texas**
**Trial Cause No. PC05037**

### MEMORANDUM OPINION

A jury found, by clear and convincing evidence, that grounds exist for the termination of C.H.'s parental rights to the child E.E.L., and that termination is in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(1),(D),(E),(N),(O), (2) (West Supp. 2012). The jury also found, by a preponderance of the evidence, that it is in E.E.L.'s best interest that the Texas Department of Family and Protective Services be appointed E.E.L.'s managing conservator and that G.B., the child's grandmother and intervenor in the suit, not be named a possessory conservator of E.E.L. Both C.H. and G.B. appeal the trial court's judgment.

C.H.'s court-appointed appellate counsel submitted a brief. The brief provides

counsel's evaluation of the record and applicable case law. He concludes that there are no arguable grounds to be advanced on appeal. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *In re L.D.T.*, 161 S.W.3d 728, 731 (Tex. App.—Beaumont 2005, no pet.). This Court has reviewed counsel's brief and the trial court record, and we agree with counsel's conclusion that no arguable grounds for appeal by C.H. exist.[1]

G.B. filed a *pro se* brief on appeal. She maintains that she should have been granted a trial separate from C.H. Rule 174(b) of the Texas Rules of Civil Procedure allows a trial court to order a separate trial "in furtherance of convenience or to avoid prejudice[.]" Tex. R. Civ. P. 174(b). To preserve a complaint for appellate review, a party must first demonstrate that the complaint was made to the trial court by a timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1). Under the circumstances, this rule applies to the preservation of G.B.'s constitutional claim of denial of due process. *See Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993); *Segovia v. Tex. Dep't of Protective and Regulatory Servs.*, 979 S.W.2d 785, 788 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). By failing to bring her complaint to the trial court's attention and obtain a ruling, G.B. has failed to preserve this issue for our consideration. Any alleged error is waived. Tex. R.

---

[1]In connection with withdrawing from the case, appellate counsel shall inform C.H. of the result of this appeal and that she has a right to file a petition for review with the Texas Supreme Court. *See* Tex. R. App. P. 53; *In re K.D.*, 127 S.W.3d 66, 68 n.3 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

App. P. 33.1(a); *see generally In re B.L.D.*, 113 S.W.3d 340, 344-45 (Tex. 2003).

G.B. challenges the trial court's admission of the videotape and the trooper's testimony regarding her arrest for driving while intoxicated. G.B. did not object to the trooper's testimony at trial. She did not preserve the issue for review. Tex. R. App. P. 33.1(a). On appeal, G.B. argues the trial court should not have admitted the videotape because the depiction of her arrest was irrelevant to the case and "happened long before E.E.L. was born[,]" and "there was no conviction and the case was dropped." G.B. objected at trial that the State did not provide her a copy of the videotape during discovery. G.B.'s trial objection was not the same as the issue she now raises on appeal. *See id.*; *In re C.P.V.Y.*, 315 S.W.3d 260, 269 (Tex. App.—Beaumont 2010, no pet.); *see also generally In re C.Q.T.M.*, 25 S.W.3d 730, 736 (Tex. App.—Waco 2000, pet. denied) ("[T]he general rule prohibiting the admission of *res inter alios* acts must bow in suits affecting the parent-child relationship, particularly insofar as the best interest of the child is at stake."). G.B. cites no authority supporting a claim that a non-parent seeking conservatorship and access may raise ineffective assistance as a ground for reversal when there is no statutory or constitutional right to counsel and when counsel was not appointed by the trial court. *See* Tex. Fam. Code Ann. § 107.013(a)(1), (c) (West Supp. 2012); *In re G.J.P.*, 314 S.W.3d 217, 222-23 (Tex. App.—Texarkana 2010, pet. denied); *In re M.J.*, No. 09-09-00355-CV, 2010 Tex. App. LEXIS 6272, at **10-11 (Tex. App.—Beaumont Aug. 5, 2010, no pet.) (mem. op.).

We read G.B.'s brief as challenging the sufficiency of the evidence supporting the jury's findings that the Department should be appointed E.E.L.'s sole managing conservator and that G.B. should not be named a possessory conservator of E.E.L. Although G.B. had taken care of E.E.L. from E.E.L.'s birth to the date of removal and desired appointment as either E.E.L.'s possessory or sole managing conservator, the evidence raised fact issues regarding whether G.B. could adequately care for E.E.L. The jury heard evidence that at around eight months old, E.E.L. was removed by the Department after a report concerning the parents' mental health and drug use. The Department did not place E.E.L. with G.B. for various reasons: the Department was concerned that G.B. used E.E.L. to manipulate the parents; several reports had been made to Adult Protective Services regarding G.B.; and G.B. had health issues.

A witness for the Department explained that G.B. would allow C.H. to come get E.E.L. even though G.B. knew C.H. had mental health issues and G.B. knew the history of domestic abuse between the parents. The jury heard evidence that C.H. had reported in the past that she had been sexually abused as a child by one of G.B.'s boyfriends. The Department refused to let G.B. transport E.E.L. during unsupervised visits because records showed a history of driving while intoxicated. The caseworker explained that even though records showed the DWI was dismissed, the Department was still concerned because of the "potential for there being a problem with alcohol and drugs."

The Department caseworker assigned after E.E.L.'s removal testified that the

4

Department had requested that G.B. obtain a written letter from her doctor confirming that G.B., despite her medical condition and medications, could safely care for E.E.L. on a twenty-four-hour basis. G.B. provided the caseworker with a letter from her treating physician with a list of her medications and a statement that her medical condition was controlled.

The jury heard the caseworker's testimony that if parental rights were terminated it would not be in E.E.L.'s best interest to continue having contact with G.B., even though G.B. cares for E.E.L. and the caseworker had never seen G.B. harm E.E.L. A supervisor testified that the Department's recommendation was that parental rights should be terminated, and that unrelated adoption would be in E.E.L.'s best interest. The Department believed that, because of E.E.L.'s young age, placement with G.B. would risk E.E.L.'s safety. The supervisor felt that it is in E.E.L.'s best interest to have no contact with G.B.

A supervisor with Adult Protective Services testified that APS received five "intakes" regarding G.B. One intake from 2007 was an allegation that G.B. could not afford her mental-health medications and was not taking them. Another intake was in 2008 when G.B. was in Tyler at the Salvation Army where she sought housing assistance and complained that she became confused because of her history of seizures and memory loss. One report listed her disabilities as congestive heart failure, epilepsy seizures, neuropathy, chronic asthma, chronic bronchitis, and COPD.

G.B. testified that she allowed C.H. to drop out of school at seventeen, to be

5

home-schooled for about six months, and then to move in with E.E.L.'s father at around eighteen. G.B. stated that one of her boyfriends and a cousin had sexually abused C.H. when she was a child. As far as the medications listed by G.B.'s physician, G.B. claimed that although the physician's letter stated that one of the prescriptions was for the treatment of bipolar disorder, G.B. was not aware she had ever been diagnosed with bipolar disorder. She stated that the prescription was to treat a nerve problem in her back. She denied having a drinking problem but admitted that she has been drinking on occasion since E.E.L.'s removal but does not "get intoxicated that much." G.B. testified that, even though she is aware of the way her prescription medications interact with alcohol, "every now and then" she gets "overwhelmed with [E.E.L.'s] being gone" and "tr[ies] to cover up the pain" with drinking.

In 2006, G.B. pleaded guilty to altering a prescription for hydrocodone by changing the amount prescribed. She admitted being convicted for public intoxication after E.E.L. was removed. G.B. explained that when C.H. was seven months pregnant with E.E.L. and living with G.B., they were together in a car in which an officer found marijuana. G.B. "took the rap to keep [her] daughter from going to jail." G.B. testified that although it bothered her, she would allow C.H., prior to E.E.L.'s removal, to come take E.E.L when C.H. was "messed up" on drugs.

Trooper Akers testified that, while on patrol in May 2009, he arrived at the scene of a one-vehicle accident. G.B. was the driver. Akers testified G.B. had bloodshot eyes. He

6

smelled alcohol. G.B. told him that after she had consumed four mixed drinks, she had gone to her daughter's house. When her daughter would not let her stay, G.B. left. She ran off the road, and hit a mailbox, a cement culvert, and a parked car in a driveway. G.B. was unable to pass the field sobriety tests. She refused a portable breath test and Akers arrested her. While conducting a vehicle inventory, a deputy found medication in G.B.'s car. At the sheriff's office, G.B. agreed to take a breathalyzer test. She admitted she was intoxicated. The arrest did not result in a conviction because the state filed a motion to dismiss based on invalid intoxilyzer results.

G.B.'s treating physician testified by phone. He testified to G.B.'s medications and explained that G.B. had been diagnosed with bipolar disorder a long time ago, and that she had previously been under the care of a psychiatrist and neurologist. Although the physician testified that G.B.'s health issues were under control, he stated that if someone taking the same medications as G.B. also consumed alcohol, he or she would not be able to care for a young child. He testified that he has treated G.B. for "8 to 10 years, if not more[,]" and that G.B. had never reported to him that she drinks alcohol. He stated that if he knew that she did, he would not prescribe her medications.

The child's foster mother testified that E.E.L. has been with her almost a year and a half. E.E.L. was developmentally behind but has improved while in foster care. The foster mother is a pre-kindergarten teacher and has adopted another toddler through CPS. The foster mother testified that she did not want to think about adopting E.E.L. "until

everything is settled[,]" because C.H.'s parental rights had not been terminated. Hypothetically, if the court terminated C.H.'s parental rights, the foster mother testified it is possible that she would be interested in adopting E.E.L.

The record contains evidence showing that the Department could provide E.E.L. with a safe home where she would receive adequate care. There is also evidence from which the jury could reasonably conclude that G.B. could not. The evidence was sufficient to allow the jury to reasonably conclude that E.E.L.'s best interest would be served by making the Department the sole managing conservator of E.E.L. and that it is not in E.E.L.'s best interest to make G.B. possessory conservator. We conclude the evidence is sufficient to support the jury's verdict. The appellate issues are overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on August 17, 2012
Opinion Delivered November 1, 2012

Before McKeithen, C.J., Gaultney and Horton, JJ.

8