

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00220-CR

_____

DAVID ARCE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1746420

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant David Arce appeals his murder conviction. *See* Tex. Penal Code Ann. § 19.02(d). He contends that the trial court erred (1) by admitting text messages between Arce and his wife that had been exchanged during the week before the murder and (2) by excluding Instagram private messages that the decedent had sent to Arce's wife the day of the murder. These errors, according to Arce, were harmful.

Because we conclude that Arce failed to preserve error for appellate review, in part, and that the complained-of evidentiary rulings did not constitute an abuse of discretion, we affirm.

## I. Background

Arce and his wife, Xzenthia Darden, separated in 2021. When she started dating someone else, making it clear that she was no longer interested in Arce, he became jealous and resentful. She dated Oscar Roney, the decedent, for six or seven months before Arce shot and killed him in August 2022.

On August 28, 2022, Arce went to Darden's home to drop off their two young children. Darden allowed him to come inside so that they could talk. At some point, she told him that Roney was coming over and that he needed to leave.[1] Arce refused to leave, claiming that he "wanted to meet" Roney. According to Darden, Arce

---

[1]Darden knew that Roney was coming over because she had received a private message from him on the social media application, Instagram, letting her know that he was on his way. Darden explained that she had "blocked" him after getting into "a disagreement" with him earlier that day, so he had to message her on Instagram.

appeared to have been "fine" and seemed "friendly" that night. She told him to "be cool," and he said that he would.

When Roney arrived at Darden's home, she let him in and he said hello to her, Arce, and Arce and Darden's seven-year-old daughter, who was on the couch in the living room. Arce told Roney to sit, and Roney declined. In response, Arce pulled out a gun and pointed it at Roney. He then walked toward Roney and patted him down. Roney was not armed. Roney tried to leave, but Arce blocked the door. Darden tried to get Arce to move away from the door and to let Roney leave, but he pushed her to the side. She again tried to make Arce leave, but he refused.

At some point during the altercation, Arce "chest bump[ed]" Roney, and the two men started fighting. Darden described the fight as "chaotic." Arce ended up on the ground with Roney on top of him, and the "scuffling" continued on the ground. Moments later, Arce fired his gun multiple times. Roney immediately got off Arce and moved away from him. Then, while Roney was on his knee, not touching Arce, Arce stood up and shot him two times. Arce fired five shots in total during and after the fight. He hit Roney once in his chest and once in his arm.

Roney started bleeding; the blood from his chest wound soaked his shirt and dripped on the floor, following him in a trail of blood as he attempted to leave by walking back outside. Following Roney outside with Arce, Darden called 911, and while she was on the phone with the dispatcher, Arce began pacing and yelling things like, "Why did you make me shoot you?" and "You shouldn't have hit me," and

3

referring to himself as Darden's "lover." He also pushed Darden and Roney onto the ground multiple times. When first responders arrived, Arce was arrested. Roney was taken to the hospital and subsequently died on the operating table.

From the time that Roney arrived at Darden's home until Arce shot him, only about ten minutes had elapsed. Arce did not have any visible injuries from the fight, nor did he have any of Roney's blood on him. Following an investigation, Arce was indicted for murder.

At Arce's murder trial, the jury heard testimony from Roney's brother, Darden, Arce and Darden's daughter, one of the homicide detectives who had investigated the murder, and the medical examiner who had performed Roney's autopsy. The jury ultimately found Arce guilty, determined that he had killed Roney "under the immediate influence of sudden passion arising from an adequate cause," and assessed his punishment at twenty years' confinement. The trial court entered its judgment accordingly. This appeal followed.

## II. Standard of Review

We use an abuse-of-discretion standard when reviewing a trial court's evidentiary rulings. *See Jenkins v. State*, 493 S.W.3d 583, 607 (Tex. Crim. App. 2016); *McCann v. State*, No. 02-19-00397-CR, 2020 WL 6326148, at *5 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op., not designated for publication). A trial court abuses its discretion when its ruling falls outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). If an evidentiary

4

ruling is correct under any theory of law applicable to the case, we uphold the ruling. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006). "A trial judge is given considerable latitude with regard to evidentiary rulings." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018).

### III. Admission of Text Messages Between Arce and Darden

During Darden's testimony, the State introduced screenshots of text messages between Darden and Arce, which were taken on Darden's phone. In the text messages, Arce expressed his discontentment with Darden's dating someone else and with her disinterest in him. He called her a "gold digge[r]" and a "loser"; he told her to "[f]uck off" and not to come to him for help "next time"; and he stated that he was "mad" at her, that he hoped she and her new boyfriend would "burn together," that he would no longer be doing any "boyfriend duties" or paying any "boyfriend bills," and that he would "make [her] regret this." He also intermittently sent "[h]u[g]s" and apologies and sought sex from Darden. The time stamps on the text messages indicated that Arce had sent them to Darden between August 16 and August 22, which Darden explained meant August of 2022.

Arce objected to the admission of the text messages for "improper predicate" and "relevance," arguing that they could not be authenticated and that they were "more prejudicial than probative under [Rule] 403." The trial court overruled Arce's objections and admitted the text messages, which were published for the jury.

5

## A. Authentication

When the State moved to admit the text messages into evidence, Arce took Darden on voir dire to determine whether the date, time, and completeness of the text messages could be authenticated. He asked her for the date and time that the screenshots of the text messages were taken; whether the screenshots included the entire conversation, "without knowing the date and time, to look at potential records"; and whether the screenshots were "a complete context, but we don't have date and time, the way [she] produced th[em]." When Darden confirmed that she did not remember the date or time, Arce lodged his improper-predicate objection:

> [DEFENSE COUNSEL]: We'd object to [State's exhibits] 143 to 157, improper predicate, at this point, Your Honor.
>
> THE COURT: What's improper about the predicate?
>
> [DEFENSE COUNSEL]: That and relevance. We ask the Court to do a balancing test. It's more -- it's more prejudicial than probative under 403 as the witness can't identify when this was in context of this crime.
>
> . . . .
>
> THE COURT: Then what's missing in the predicate?
>
> Let me see them.
>
> [DEFENSE COUNSEL]: They can't authenticate the date and time and where this was to make this --
>
> THE COURT: Okay.

On appeal, Arce argues that the State did not "establish an adequate predicate" for the text messages because Darden's testimony identifying Arce as the purported sender of the text messages was conclusory and insufficient to show authenticity. The State contends that Arce failed to preserve this complaint for appellate review because his objection at trial was based on the date of the text messages and their temporal connection to the charged offense. We agree with the State.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *Golliday v. State*, 560 S.W.3d 664, 669 n.16 (Tex. Crim. App. 2018). While no "hyper-technical or formalistic use of words or phrases" is required for an objection to preserve error, the objecting party must still "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)); *see Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) ("We have said that '[t]he purpose of requiring [an] objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection.'").

An objection preserves only the specific ground cited. Tex. R. App. P. 33.1(a)(1)(A); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g). The complaint on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark*, 365 S.W.3d at 339; *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena*, 285 S.W.3d at 464 ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). To determine whether the complaint on appeal conforms to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Pena*, 285 S.W.3d at 464.

Here, Arce's complaint on appeal does not comport with the complaint he made in the trial court. When the trial judge specifically asked Arce what he believed was missing in the predicate, Arce did not tell the judge that the State could not authenticate Arce's identity as the sender of the text messages. Further, when he attempted to establish a lack of predicate by taking Darden on voir dire, he did not question her about the identity of the purported sender of the text messages but focused only on the date and time, ostensibly conceding that he had sent the text messages. Nothing in the record indicates that Arce made either the trial judge or the State aware of his argument that the State did not establish an adequate predicate as to

8

the sender's identity. Accordingly, he has failed to preserve his authentication complaint for our review. *See* Tex. R. App. P. 33.1(a)(1).

**B. Relevance**

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Tex. R. Evid. 401. "Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004) (op. on reh'g). Here, Arce concedes that relevance is a "very low bar." Nevertheless, he argues that the text messages were not relevant because (1) they either were "undated" or were sent "at least six days before the altercation" and (2) they "mostly reflect the crumbling of Darden[] and Arce's marriage."

By Arce's own account, "who the aggressor was prior to the shooting was critical" in this case. The text messages, according to Arce, showed the jury the "emotions" that Arce had been feeling for "weeks while he grappled with his wife's moving into a relationship with another man." Other evidence showed that one of those emotions was jealousy. Then, after at least a week of feeling jealous and "grappl[ing] with" Darden's relationship with another man, Arce waited for that man—Roney—at Darden's home and refused to leave because he "wanted to meet" Roney. Within minutes of Roney's arrival, Arce pointed a gun at him. Arce then,

9

admittedly, started an altercation that ended in his standing over Roney and shooting him.

By Arce's own account of the "critical" evidence in this case, the text messages were relevant because they made it more probable that Arce was the aggressor. *See Orr v. State*, 306 S.W.3d 380, 394–95 (Tex. App.—Fort Worth 2010, no pet.) ("A jury may infer intent from any facts that tend to prove its existence, such as acts, words, and conduct of the defendant."); *see also Duntsch v. State*, 568 S.W.3d 193, 226 (Tex. App.—Dallas 2018, pet. ref'd) (concluding email sent by defendant eight months before the offense was relevant to prove defendant's intent). The trial court thus did not abuse its discretion by admitting the text messages over Arce's relevance objection.

## C. Rule 403

Relevant evidence may be excluded under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op on reh'g); and then citing *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication)). This presumption places the burden on the party opposing admission to show that the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *Id.* at 547.

Evidence is not excludable under Rule 403 if it is merely prejudicial; "all evidence against a defendant is . . . designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rule 403 is concerned not with prejudicial evidence but with evidence that is unfairly prejudicial. Tex. R. Evid. 403; *Pawlak*, 420 S.W.3d at 811. "Unfair prejudice" refers to a "tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *James*, 623 S.W.3d at 549 (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)).

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco*, 210 S.W.3d at 641. When undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

Here, Arce argues that the admission of the text messages was unfairly prejudicial because it allowed the jury to "see into the dissolution of Darden and

11

Arce's marriage and Arce's accompanying emotions" and because the text messages "had nothing to do with the events of the day or the altercation that night." In other words, Arce reiterates his relevance argument to show unfair prejudice. He also argues that the text messages "contravened" Darden's testimony describing his demeanor on the night of the murder as "friendly" or "fine."

### 1. Probative force and the State's need

The trial court could have reasonably concluded that while the text messages were prejudicial, they were not unfairly so. For the same reason that the text messages were relevant, their probative value was high because they made it more probable that Arce was the aggressor—that is, that he intended to kill Roney or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Roney's death, which are elements of the charged offense. *See* Tex. Penal Code Ann. § 19.02(b)(1), (2); *see also Hart v. State*, 688 S.W.3d 883, 892 (Tex. Crim. App. 2024) ("Evidence is probative if it tends to make a fact of consequence more or less likely.").

The State's need for the text messages was also high. As Arce points out, the text messages contradicted Darden's testimony about Arce's "friendly" demeanor by showing the jury his emotional state in the days leading up to his confronting and killing his wife's new boyfriend. *Cf. Montgomery*, 810 S.W.2d at 390 (distinguishing probative value of evidence "[w]hen the proponent has other compelling or *undisputed* evidence" to prove the same fact (emphasis added)). Arguably, the text messages also

explained why, despite Arce's "friendly" demeanor, Darden still wanted him to leave her house before Roney came over. While the text messages corroborated Darden's testimony that Arce had been jealous and resentful about her dating someone else, they were not cumulative of that testimony. *See Saing v. State*, No. 02-22-00296-CR, 2024 WL 3458074, at *6 (Tex. App.—Fort Worth July 18, 2024, pet. ref'd) (mem. op., not designated for publication) ("Even though the State had other evidence to support the indicted charges, the [complained-of] evidence had significant probative value in corroborating [the victim's] account of her relationship with [the defendant] and the allegations . . . .").

The probative force of and the State's need for the text messages weigh in favor of admission. *See Gigliobianco*, 210 S.W.3d at 641.

## 2. Balance against remaining *Gigliobianco* factors

There was little to no risk that the text messages would have had an emotional impact on the jury such that it would find guilt on grounds other than proof of the charged offense. The text messages concerned Arce's jealousy and resentment related to the dissolution of his marriage and to Darden's relationship with Roney, and they arguably showed Arce's intentions on the night of the murder. The trial court could have reasonably concluded that the text messages demonstrated Arce's intent either to kill Roney or to cause serious bodily injury by committing an act clearly dangerous to human life and, therefore, that the text messages were not independent of the charged offense. *See Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *see, e.g.,*

13

*Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002) (concluding that complained-of evidence was directly relevant because it showed defendant's motive and therefore did not have tendency to suggest decision on improper basis); *Atkinson v. State*, No. 03-19-00204-CR, 2021 WL 936702, at *10 (Tex. App.—Austin Mar. 12, 2021, pet. ref'd) (mem. op., not designated for publication) (holding text messages concerning defendant's involvement in distribution of narcotics demonstrated defendant's intent to deliver and thus were not independent of drug-trafficking offense). Moreover, other evidence—Arce waited for Roney, pointed a gun at him, made sure that he was not armed, blocked the door to prevent him from leaving, started a fight with him, fired a gun during the fight, and stood over him and shot him after the fight was over—strongly supported the jury's guilty verdict.

Further, the text messages were not scientific in nature, nor were they overly complex; thus, there was little risk of jury confusion or of the jury's giving the text messages undue weight. *See Hunt v. State*, No. 02-23-00259-CR, 2024 WL 4562494, at *6 (Tex. App.—Fort Worth Oct. 24, 2024, pet. ref'd) (mem. op., not designated for publication) ("[B]ecause the evidence came through lay witnesses and was not scientific or technical in nature, there was little risk of the jury's giving it undue weight."); *Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *6 (Tex. App.—Fort Worth Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication) ("[B]ecause the evidence was not scientific or complex, there was little risk of jury confusion."). And the presentation of the text messages did not consume

14

an inordinate amount of time. Indeed, out of approximately 250 pages of testimony in the record, the text messages consisted of only six pages. *See Saing*, 2024 WL 3458074, at *6 (reaching similar conclusion where complained-of testimony occupied nine pages out of 250 pages of testimony in the record).

Balancing the probative force of and the State's need for the text messages against the remaining *Gigliobianco* factors, the trial court could have reasonably concluded that Arce did not meet his burden to show that the probative value of the text messages between he and Darden was substantially outweighed by the risk of unfair prejudice. *See* Tex. R. Evid. 403; *James*, 623 S.W.3d at 549.

### 3. Rule 403 conclusion

Being mindful of the need for judicial restraint in appellate review of a Rule 403 ruling, we conclude that the trial court was well within its discretion to admit the text messages. *See Saing*, 2024 WL 3458074, at *6 (commenting that "[i]f judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal").

### IV. Exclusion of Instagram Messages Between Roney and Darden

During Arce's cross-examination of Darden, he offered the Instagram messages that Roney had sent to Darden on the day of the murder, which were captured in a photograph of Darden's phone. In the messages, Roney told Darden that he was on his way to her house, that he was going to "kick [her] ass," and that

15

she had no "right to block [him,] bitch." According to Arce, the messages would have shown that Roney was "aggressive and looking for a fight."[2]

The State objected to the admission of the messages on relevance and hearsay grounds. The trial court initially sustained the State's objection without clarifying whether it was sustained on the relevance ground or the hearsay ground. When Arce attempted to admit the messages a second time, the State lodged the same objections. This time, the trial court stated that the relevance of the messages "ha[d] been established." Regarding hearsay, Arce argued that the messages were not offered "for the truth of the matter asserted" but "to put everything in context." The trial court sustained the hearsay objection and excluded the messages. Arce offered the messages for record purposes only, and the trial court admitted the messages for the record.

On appeal, Arce argues that the messages should have been admitted under the statement-against-interest exception to the rule against hearsay.[3] *See* Tex. R. Evid. 803(24). The State argues that Arce failed to preserve this complaint for appellate review because he did not argue this ground of admissibility to the trial court. We agree with the State.

The same preservation requirements that apply to a party's objection to evidence also apply to a party's proffer of evidence. *Reyna*, 168 S.W.3d at 179; *see* Tex.

---

[2]Arce did not submit this argument to the trial court.

[3]In his brief, Arce also argues that the messages should have been admitted because they were relevant. As we have noted, however, the record indicates that the trial court ultimately did not exclude the messages on relevance grounds.

R. App. P. 33.1(a)(1); *Golliday*, 560 S.W.3d at 671 (concluding appellant did not preserve constitutional claim for appeal because he "did not clearly articulate a constitutional basis supporting the admission of the excluded evidence at trial"). The proffering party must clearly articulate its grounds for admissibility so that the trial judge has the opportunity to rule upon those grounds. *See Golliday*, 560 S.W.3d at 670–71 (confirming rule that to preserve a complaint of the trial court's exclusion of evidence, "a defendant must state the grounds for the ruling that he seeks with sufficient specificity to make the [trial] court aware of these grounds"); *Reyna*, 168 S.W.3d at 179 ("Because [appellant] 'did not clearly articulate' that the Confrontation Clause demanded admission of the evidence, the trial judge 'never had the opportunity to rule upon' this rationale."). Thus, an appellant is "responsible for preserving the error he sought to raise on appeal by specifically articulating the legal basis for his proffer at trial." *Golliday*, 560 S.W.3d at 669; *see In re C.Q.T.M.*, 25 S.W.3d 730, 737–38 (Tex. App.—Waco 2000, pet. denied) ("The arguments asserted at trial by the proponent of the evidence must comport with the arguments asserted on appeal.").

Here, Arce articulated to the trial judge that the messages were admissible because he was not offering them for their truth, effectively arguing that the messages were not hearsay. *See* Tex. R. Evid. 801(d)(2) (defining hearsay); *Reyna*, 168 S.W.3d at 179 ("[Appellant's] references to 'the truth of the matter asserted' reflect that he was arguing that the evidence was not hearsay under Evidence Rule 801(d)."). Nothing in

17

the record indicates that Arce put the trial court on notice that he was offering the messages for their truth and arguing the statement-against-interest exception to hearsay as his legal basis for admissibility. Accordingly, he has failed to preserve his complaint for our review. *See* Tex. R. App. P. 33.1(a)(1).

## V. Conclusion

Having concluded that Arce failed to preserve error, in part, and that the trial court did not abuse its discretion by admitting the text messages between Darden and Arce, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 12, 2025